## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN JUNOD, individually and as Administratrix of the Estate of Francis Junod, deceased,<br><br>Plaintiff,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY, a Nebraska Corporation and BURRIS LOGISTICS, INC., a Delaware Corporation,<br><br>Defendant. | CIVIL ACTION NO.: 17-cv-00953 |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, Joan Junod, by way of Complaint against Defendants United of Omaha Life Insurance Company and Burris Logistics, Inc. says as follows:

### I.   PARTIES

1.   Plaintiff, Joan Junod ("Plaintiff") is an individual residing at 3443 Aubrey Avenue, Philadelphia, Pennsylvania 19114 and is the widow and administratrix of the Estate of Francis Junod, and the sole beneficiary of a group life insurance policy issued to Francis Junod (hereinafter referred to as "Mr. Junod" or "Plaintiff's decedent") by Defendant United of Omaha Life Insurance Company through his employer, Defendant Burris Logistics, Inc. and its wholly owned subsidiary, Honor Foods.

2.   Defendant United of Omaha Life Insurance Company ("Defendant United") is a life insurance company, incorporated in the State of Nebraska, having

its principal place of business at Mutual of Omaha Plaza, Omaha, Nebraska 68175. At all times relevant hereto, Defendant United was authorized to do business, and was doing business, in the Commonwealth of Pennsylvania.

3.    Defendant Burris Logistics, Inc. ("Defendant Burris") is incorporated in the State of Delaware and has its principal place of business at 501 S.E. 5th Street, Milford, Delaware 19963.  Defendant Burris, a freight and warehousing company, is the parent of a wholly owned subsidiary, Honor Foods, a food distribution company, located at 1801 N. 5th Street, Philadelphia, Pennsylvania 19122.

## II.    JURISDICTION AND VENUE

4.    This is an action for damages based on Defendants' violations of the provisions of the fiduciary duty provisions and wrongful denial of benefits under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq and 29 U.S.C. §1132(a)(3) and 1132(a)(1) et seq.

5.    Insofar as this claim arises under the federal statutes, this Court has subject matter jurisdiction under 29 U.S.C. §1331 (federal question jurisdiction).

6.    This Court has personal jurisdiction over both Defendants insofar as both Defendants do business in the Commonwealth of Pennsylvania and the cause of action arose here.

7.    Venue is proper in this judicial district pursuant to 29 U.S.C. §1391(b)(2) insofar as a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

8.      Plaintiff has pleaded additional state and common law claims in the alternative over which this court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 and §1441(c).

## III.    BACKGROUND FACTS

9.      Plaintiff repeats and incorporates the allegations contained in Paragraphs 1-8 of this Complaint as if set forth fully and at length herein.

10.      Plaintiff's deceased husband, Francis Junod was, at all times relevant hereto, a full time employee of Defendant Burris and was employed as a truck driver for its subsidiary, Honor Foods.

11.      As such, Mr. Junod was a participant in the "2015 Honor Foods Union Team Member Benefit Plan" ("the Plan"), a plan governed by ERISA and administered by Honor Foods and Defendant Burris.  [See copy of the Plan, attached as Exh. A].

12.      The Plan provided health and welfare benefits to employees of Defendant Burris, like Mr. Junod, as part of their employment, including group life insurance coverage provided through Defendant United.

13.      Upon information and belief, the premiums for the group life insurance were paid by Defendant Burris or its subsidiary Honor Foods, directly to Defendant United, through payroll deductions from employees, like Mr. Junod.

14.      The group life insurance coverage provided by Defendant United through the Plan carried a defined "basic" death benefit for truck drivers, like Mr. Junod, of $50,000, although employees could purchase additional "voluntary life

benefits in $10,000 increments to a maximum of 4 times your salary or $500,000."
[See Plan (Exh. A) at p. 24].

15.    Neither Defendant Burris nor Defendant United ever provided Plaintiff
with a copy of the life insurance policy issued to Burris or a copy of any Certificate
of Insurance, identifying Plaintiff's Decedent's participation in the Group Life
Insurance Plan.

16.    The Plan did not provide at any time any notices whatsoever to
employees, like Mr. Junod, of their statutory right to convert their group life
insurance policy to an individual plan upon termination/separation from
employment with Defendant Burris or its subsidiary, Honor Foods.

17.    Mr. Junod worked as a truck driver for Defendant Burris and its
subsidiary Honor Foods for 18 years.

18.    In August 2014, Mr. Junod was diagnosed with prostate cancer, which
despite chemotherapy and radiation, aggressively spread to esophageal cancer and
then brain cancer.

19.    Sadly, Mr. Junod succumbed to his disease and passed away on June 5,
2015.

20.    Prior to his passing on June 5, 2015, Defendant Burris, through its
subsidiary Honor Foods, terminated Mr. Junod effective March 1, 2015, at the
expiration of his medical leave period under the Family Medical Leave Act.

21.    The Notice of Termination was signed by Ann Polites, the Honor Foods
Director of Human Resources, and was sent to Mr. Junod at his home address in

Philadelphia by certified mail on February 27, 2015. [A copy of the Termination Letter is attached hereto as Exh. B].

22.    Although the Termination Letter requested that Mr. Junod return his company issued cell phone, the Notice of Termination did not mention or discuss the continuation of benefits, including the right to convert his group life insurance policy to an individual policy or the time frame for doing so.

23.    After Mr. Junod's death in June 2015, Plaintiff, Mr. Junod's widow and sole beneficiary on the life insurance policy, called Ms. Polites at Honor Foods to inquire as to Frank Junod's life insurance benefits. Plaintiff was told by Ms. Polites that Defendant United had sent Mr. Junod papers in March 2015 (when he was in the midst of his cancer treatments) about the conversion policy which he had to sign and return within 30 days.

24.    Plaintiff, who lived with Mr. Junod at the time and was his primary caregiver, remarked that her husband, a meticulous record keeper, had never received any such notice from Defendant United and if he had received same, he would have completed any such form promptly and completely, especially in light of the fact that he had paid into the policy during his employment at Honor Foods and the life insurance policy was intended as to benefit his wife, and would be necessary, in light of his terminal illness.

25.    Although Plaintiff requested Ms. Polites, the Plan Administrator, to provide a copy of the notice that was allegedly sent to her late husband in March 2015, Ms. Polites said she did not have it.

26.    Instead, Ms. Polites then offered that Honor Foods would "reinstate" the policy if Ms. Junod would agree to pay "back premiums" that would have been due for the three months from April through June 2015, when Mr. Junod passed away.

According to Ms. Polites, Honor Foods would "put up" $2,000 toward the back premiums if Ms. Junod would agree to put up the other "$2,000".

27.    Ms. Polites further informed that Ms. Junod would have to agree to reimburse Honor Foods for the $2,000 it "put up" after the policy was reinstated and the death benefits paid.

28.    Relying on Ms. Polites as the Plan Administrator, Plaintiff agreed to the "reinstate" arrangement proposed by Ms. Polites.

29.    Ms. Polites sent claim forms to Plaintiff to complete, and Plaintiff completed the paperwork and returned it to Honor Foods, but did not hear anything from Ms. Polites.  Plaintiff never sent a $2,000 check to Honor Foods for the reinstatement because Ms. Polites never informed her when to send it or where to send it or to whom to make it payable.

30.    Two months passed and Plaintiff heard nothing.  She did not receive any response from either Defendant Burris , Honor Foods or Defendant United.

31.    In August 2015, Plaintiff called Ms. Polites to again inquire as to the status of the life insurance death benefits.  Ms. Polites informed her during that conversation that she had received an email from Defendant United that the life insurance claim was denied, but did not give any explanation.

32.    Plaintiff was understandably devastated and very upset, and Plaintiff wrote to Ms. Polites again asking for an explanation as to the reason for the denial and asking for proof that Mr. Junod had been notified of his right to convert the group life insurance policy to individual life insurance at the termination of his employment and had, in fact, declined such option.

33.    On January 18, 2016, over 10 months after Mr. Junod had been terminated by Defendant Burris and/or its subsidiary, Honor Foods, Ms. Polites sent Plaintiff a letter stating, without proof or documentation, that Defendant United had sent Mr. Junod a letter on March 9, 2015 (nine days post termination) allegedly notifying him of the conversion option and requiring payment and completion of the forms by March 31, 2015.  [A copy of Ms. Polites' January 18, 2016 letter is attached as Exh. C].

34.    Notably, Ms. Polites did not include any proof of a conversion notice having been sent or any proof that Defendant United had sent Mr. Junod a conversion notice with her January 28, 2016 letter.

35.    Plaintiff and her children have made numerous inquiries to both Defendant United and Honor Foods requesting documentation that the conversion notice was ever sent to Mr. Junod, but they have received no response from either Defendant that would show that Mr. Junod was informed of his conversion rights.

36.    Specifically, in July 2015 after Ms. Polites and Plaintiff had the conversation wherein Ms. Polites suggested "reinstatement" of the policy, Kathy Junod and Kenneth Junod, two of Plaintiff's adult children, went to Honor Foods to ask for documentation as to their father's life insurance and his conversion rights and notice.  Ms. Polites refused to speak with them and they were rebuffed.

37.    In September 2016, Janice Vicere, another of Plaintiff's adult children, finally was able to get Ms. Polites on the phone.  Ms. Vicere asked for documentation as to the conversion, and in response, Ms. Polites sent Ms. Vicere a Memo on United of Omaha Letterhead with a salutation to "Dear Frank Junod", dated March 9, 2015,

which purported to be an offer to convert the group life insurance policy to an individual policy. Attached to the Memo was a two page form explaining Conversion and a blank "Conversion Application" [A copy of the March 9, 2015 Conversion Memo and Package is attached as Exh. D].

38.     Notably, the Memo, which Ms. Polites claims was sent to Mr. Junod in March 2015 does not contain an address for Mr. Junod, does not contain any identifying information for Mr. Junod such as date of birth, or social security number, does not contain any indication as to how the Memo and Package were sent or delivered to Mr. Junod, and does not contain any signature from any one at Defendant United.

39.     Mr. Junod did not ever receive this package.

40.     Moreover, when a legal representative for Plaintiff contacted Defendant United in late 2016 asking for documentation as to the denial of Mr. Junod's life insurance claim, the representative learned that Defendant United had no information on Mr. Junod in their system, including address or date of birth.

41.     Despite numerous requests by Plaintiff and her legal representatives for payment of death benefits under Mr. Junod's life insurance policy, including a detailed pre-suit demand letter sent by counsel for Plaintiff to both Defendants on January 30, 2017 [Exh. E hereto], Defendant Burris has not agreed to pay the claim and Defendant United has denied the claim.

42.     Plaintiffs have exhausted their administrative remedies as to both Defendants.

## COUNT I
## VIOLATION OF ERISA
### Wrongful Denial of Claim for Benefits

43.    Plaintiff repeats and incorporates the allegations in Paragraphs 1-39 of this Complaint as if set forth fully and at length herein.

44.    As set forth above, Plaintiff's deceased husband, Mr. Junod was a participant in an employee benefit plan ("the Plan") administered by Defendant Burris and its subsidiary, Honor Foods, which Plan was governed by ERISA.

45.    Pursuant to the terms of this Plan, Mr. Junod paid for and was promised life insurance with a death benefit of $50,000 to be paid by Defendant United.

46.    Neither upon his separation from employment nor while employed by Defendant Burris at any time were either Mr. Junod or Plaintiff provided with notice of his right to convert his group life insurance benefits to individual benefits and therefore, the group life insurance benefits should have continued in existence.

47.    Upon Mr. Junod's death in June 2015, Plaintiff, as the beneficiary and the Administratrix of Mr. Junod's life insurance benefits, made a timely claim for benefits, which claim has been denied by both Defendants.

48.    Defendants' denial of Plaintiff's claims for death benefits is wrongful insofar as Defendants never provided Plaintiff or Mr. Junod notices of his right to convert his group life insurance policy to an individual life insurance policy.

49.    Plaintiff, through herself and her legal representatives, has exhausted her administrative remedies in seeking payment of the claim.

50.    Plaintiff is entitled to bring this civil action for enforcement, requesting payment of the claim, in full statutory remedies and penalties and attorneys fees pursuant to Section 502 of ERISA, 29 U.S.C. §1132(a) and (g).

**WHEREFORE,** Plaintiff Joan Junod demands judgment against Defendants United of Omaha Life Insurance Company and Burris Logistics, Inc. and its subsidiary Honor Foods, jointly and severally, for compensatory damages in the full amount of the death benefit due to Francis Junod at the time of his termination, statutory fines and penalties, interests, costs of suit, attorneys fees and such other relief as this Court deems just and reasonable.

**COUNT II**
**VIOLATION OF ERISA**
**Breach Of Fiduciary Duty**

51.    Plaintiff repeats and incorporates the allegations in Paragraphs 1-47 of this Complaint as if set forth fully and at length herein.

52.    At all times relevant hereto, Defendant Burris was Plan Sponsor and Plan Administrator of the Employee Benefit Plan of Burris Logistics, Inc.("the Plan").

53.    At all times relevant hereto, Defendant Burris was acting in a fiduciary capacity with respect to the Plan.

54.    Defendant Burris failed to provide to Plaintiff's decedent a copy of the Life Insurance Certificate providing life insurance through Defendant United.

55.    Defendant Burris never provided to Plaintiff's decedent a copy of the Group Life Insurance Plan provided to the Plan by Defendant United which had been provided to Defendant Burris for distribution to Plaintiff's decedent.

56.     Defendant Burris failed to provide Plaintiff's decedent with a Summary Plan Description that was sufficiently comprehensive to reasonably apprise a plan participant or beneficiary in the position of Plaintiff's decedent of his rights and obligations under the Plan, in particular the conversion rights available for the Life Insurance benefit.

57.     Defendant Burris' failure to provide a copy of a Summary Plan Description which was sufficiently accurate and comprehensive to reasonably apprise plan participants and beneficiaries including Plaintiff's decedent of his rights and obligations under the Plan constitutes a breach of Defendant Burris' fiduciary responsibility.

58.     By reason of the breach by Defendant Burris as aforesaid, Plaintiff's decedent was not provided information which Defendant Burris knew might cause harm and therefore, breached the fiduciary duty to the individual plan participant and beneficiary, Plaintiff's decedent herein.

59.     Upon information and belief, Defendant Burris was provided with a Certificate of Insurance and a copy of life insurance contract issued by Defendant United which was intended to be for the benefit of and provision to employees and in particular, Plaintiff's decedent herein, outlining their respective rights and obligations pursuant to the life insurance benefit of the group benefit plan.

60.     But for the breach of the fiduciary responsibility by Defendant Burris, Plaintiff's decedent would have been provided with sufficient information about his rights and obligations under the terms of the Plan so as to have elected his conversion rights of the life insurance benefit under the Plan.

61.   But not for Defendant's breach, Plaintiff's decedent would have elected to convert his coverage to an individual plan.

62.   As a result of the failure of the Defendant Burris to provide an adequate Summary Plan Description and a copy of the contract of life insurance and its certificate describing its benefits therein, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff Joan Junod seeks equitable relief against Defendant Burris Logistics Inc. pursuant to 29 U.S.C. §1132 (a)(3) awarding a surcharge in the amount of the life insurance proceeds lost in the amount of $50,000 because of the breach of the fiduciary duty by Defendant Burris, and for statutory fines and penalties, interest, costs of suit, attorneys fees and such other relief as this Court deems just and reasonable.

### COUNT III
### VIOLATION OF ERISA
### Wrongful Denial Of Benefits As To Defendant Burris Logistics Pursuant To 29 U.S.C. §1132(A)(1)

63.   Plaintiff repeats and incorporates the allegations in Paragraphs 1-59 of this Complaint as if set forth fully and at length herein.

64.   Plaintiff's decedent was provided with a benefit of Life Insurance coverage while employed by Defendant Burris.

65.   Plaintiff' decedent was also provided with an employee benefit of the right to exercise an option, upon separation from the company, of the right to convert the employee benefit Life Insurance into individual Life Insurance.

66.   Plaintiff's decedent was never provided with the opportunity to exercise that option by virtue of failure of Defendant Burris in not providing the

benefit of a sufficiently comprehensive Summary Plan Description to advise as to the existence of that conversion right.

67.     Plaintiff's decedent was entitled to exercise that right.

68.     Pursuant to 29 U.S.C. §1132(a)(1), Plaintiff is entitled to pursue a claim for the benefit of a timely notice of the right to convert the group plan Life Insurance benefit which has heretofore been a denied benefit.

**WHEREFORE,** Plaintiff Joan Junod demands judgment pursuant to 29 U.S.C. §1132 (a)(1) compelling Defendant Burris Logistics to provide a proper and timely opportunity to exercise the employee benefit of an exercisable opportunity to elect to convert the group life insurance policy and Plaintiff seeks payment of Plan benefits wrongfully denied also pursuant to 29 U.S.C. §1132(a)(1), plus statutory fines and penalties, interest, cost of suit, attorneys fees and such other relief as this Court deems just and reasonable.

**COUNT IV**
**VIOLATION OF ERISA**
**Breach Of Fiduciary Duty As To Defendant United**

69.     Plaintiff repeats and incorporates the allegations in Paragraphs 1-68 of this Complaint as if set forth fully and at length herein.

70.     Defendant United was, at all times relevant hereto, a plan fiduciary with respect to the Life Insurance component of the Burris Logistics, Inc. Employee Benefit Plan ("the Plan").

71.     Plaintiff's decedent was an enrollee in the group life insurance plan of Defendant Burris for which Defendant United was a benefit provider.

72.    Defendant United at no time provided a copy of the life insurance contract to Plaintiff's decedent.

73.    Defendant United never had a conversion notice sent to Plaintiff.

74.    Defendant United did not have Plaintiff's address in its records.

75.    Defendant United was obligated as a plan fiduciary to provide documents including a Summary Plan Description, a Certificate of Insurance and a copy of the life insurance policy for the life insurance benefit to Plaintiff.

76.    But for United's failure to provide documents, including the Summary Plan Description for the life insurance benefit, Plaintiff would have converted his group life insurance coverage to individual life coverage.

77.    The failure of Defendant United to provide the Summary Plan Description and the Certificate of Insurance and/or the conversion election documents and/or a copy of the life insurance policy constitutes a breach of United's fiduciary responsibility to Plaintiff.

78.    As a result of the foresaid breaches by Defendant United, Plaintiffs have been damaged.

**WHEREFORE,** Plaintiff Joan Junod demands equitable relief against Defendant United of Omaha Life Insurance Company pursuant to 29 U.S.C. §1132(a)(3) and reforming the policy of insurance to provide to Plaintiff the life insurance conversion option and to impose a surcharge against the plan in the amount of the group life coverage previously afforded in the amount of $50,000, plus statutory fines and penalties, interest, costs of suit, attorneys fees and such other relief as this Court deems just and reasonable.

## COUNT V
## VIOLATION OF ERISA
## Breach Of Fiduciary Obligations And Wrongful Denial Of Benefits

79.    Plaintiff repeats and incorporates all the allegations in Paragraphs 1-78 of this Complaint as if set forth fully and at length herein.

80.    As set forth above, Plaintiff's deceased husband, Mr. Junod was a participant in an employee benefit plan ("the Plan") administered by Defendant Burris and its subsidiary, Honor Foods, which Plan was governed by ERISA.

81.    Pursuant to the terms of this Plan, Mr. Junod paid for and was promised life insurance with a death benefit of $50,000 by Defendant United.

82.    Defendants acted as a fiduciary to the Plan with respect to the Life Insurance benefit provided thereunder.

83.    From the point of inception of the life insurance coverage of Plaintiff's decedent and throughout the term of his employment, neither Defendant provided a Summary Plan Description for the life insurance component of the Plan, nor a copy of the policy or Certificate identifying Plaintiff's decedent to the plan and specifically no information was provided describing a right to convert that group life insurance to individual insurance when his employment ceased.

84.    Upon his separation from employment, neither Plaintiff nor Plaintiff's decedent was provided with notice of his right to convert his group life insurance benefits to individual benefits and therefore, the group life insurance benefits should have continued in existence.

85.    Upon Mr. Junod's death in June 2015, Plaintiff, as the beneficiary of Mr. Junod's life insurance benefits, made a timely claim for benefits, which claim has been denied by both Defendants.

**WHEREFORE,** Plaintiff Joan Junod demands judgment against Defendant United of Omaha Life Insurance Company and Burris Logistics, Inc., jointly and severally, for compensatory damages in the full amount of the death benefit due to Francis Junod at the time of his termination as a claim for benefits of the Group Health Benefit Plan of Burris Logistics, Inc. for which Defendant United and Defendant Burris acted in a fiduciary capacity pursuant to 29 U.S.C. §1132(a)(1), and for statutory fines and penalties, interests, costs of suit, attorneys fees and such other relief as this Court deems just and reasonable.

**COUNT VI**
**BAD FAITH DENIAL OF INSURANCE CLAIM**
**Violation of 42 Pa.C.S. §8371 versus Defendant United**

86.    Plaintiff repeats and incorporates all the allegations in Paragraphs 1-85 of this Complaint as if set forth fully and at length herein.

87.    Plaintiff pleads this count for alternative relief pursuant to Fed. R. Civ. P. 8(a)(3) to the extent ERISA does not apply.

88.    As set forth above, Defendant United is an insurer authorized to do business in the Commonwealth of Pennsylvania and as such, is subject to and governed by Pennsylvania statutes and regulations, including 42 Pa.C.S. §8371.

89.    As set forth above, Defendant United provided group life insurance to Plaintiff's deceased husband, Mr. Junod, as a benefit of his employment with

Defendant Burris and its subsidiary, Honor Foods, pursuant to the Plan, which insurance had a $50,000 death benefit.

90.    Plaintiff was the sole beneficiary of Mr. Junod's life insurance.

91.    Unbeknownst to Plaintiff or her deceased husband, Mr. Junod, or to Plaintiff, until after this death, the group insurance policy had a conversion provision which allowed an employee, like Mr. Junod, to convert his group life insurance to an individual policy with the same death benefit within 30 days of his separation from employment.

92.    Defendant Burris, through its subsidiary, Honor Foods, terminated Mr. Junod, who was battling a terminal cancer, at the expiration of his medical leave period under the FMLA, on March 1, 2015.

93.    Neither Defendant Burris nor Honor Foods nor Defendant United ever provided Mr. Junod or Plaintiff with notice of his right to convert his group life insurance policy at the time of his termination.

94.    Mr. Junod died on June 5, 2015 and Plaintiff, as his beneficiary, immediately contacted the Plan Administrator at Honor Foods to make a claim for death benefits under his group life insurance policy.

95.    Notwithstanding the fact that Defendants failed to provide Mr. Junod or Plaintiff with timely notice of his right to convert his group life insurance policy to an individual policy, Plaintiff's claim was denied by Defendant United as untimely.

96.    Defendant United's denial of Plaintiff's claim for life insurance benefits constitutes a bad faith denial insofar as (1) Defendant United lacked any reasonable

basis for denying the claim insofar as they have no proof that a conversion notice was timely sent to Mr. Junod and (2) Defendant United knew of no reasonable basis in denying the claim and/or recklessly disregarded its obligations in properly notifying Plaintiff of his rights and in the processing of the claim.

97.    Defendant United's denial of the claim constitutes a violation of 42 Pa.C.S. §8371 warranting an award of compensatory damages to Plaintiff for the full amount of the death benefit ($50,000) at the time of Mr. Junod's separation from employment, interest on the claim from June 5, 2015 to the present at a statutory interest rate equal to the prime rate plus 3%, punitive damages and attorneys fees and costs.

**WHEREFORE**, Plaintiff, Joan Junod hereby demands judgment in her favor against Defendant United of Omaha Life Insurance Company for compensatory damages in the amount of $50,000, statutory interest, punitive damages and attorneys fees pursuant to 42 Pa.C.S. §8371, and for such other relief as this Court deems just and reasonable.

**COUNT VII**
**BREACH OF CONTRACT**

98.    Plaintiff repeats and incorporates all the allegations in Paragraphs 1-97 of this Complaint as if set forth fully and at length herein.

99.    Plaintiff seeks alternative relief to the extent ERISA does not apply pursuant to Fed. R. Civ. P. 8(a)(3).

100.    The group life insurance provided to Plaintiff's deceased husband, Mr. Junod, under the Plan, was a contract between Mr. Junod and Defendants whereby

Defendants were contractually obligated to paying Mr. Junod's beneficiary $50,000 upon his death.

101.    Plaintiff and Mr. Junod have performed all obligations under the contract, including making a timely claim for death benefits upon Mr. Junod's death.

102.    Defendants' refusal to pay death benefits due under the life insurance policy constitute a breach of contract.

**WHEREFORE,** Plaintiff, Joan Junod hereby demands judgment in her favor against Defendants United of Omaha Life Insurance Company and Burris Logistics, Inc. jointly and severally, for compensatory damages in the amount of $50,000, plus interest, costs of suit and attorneys fees and such other relief as this Court deems just and reasonable.

**COUNT VIII**
**NEGLIGENCE**

103.    Plaintiff repeats and incorporates all the allegations in Paragraphs 1-102 of this Complaint as if set forth fully and at length herein.

104.    Plaintiff seeks alternative relief to the extent ERISA does not apply pursuant to Fed. R. Civ. P. 8(a)(3).

105.    The group life insurance provided to Plaintiff's deceased husband, Mr. Junod, was an employee benefit under the Plan.

106.    As set forth above, the Plan document provided to Mr. Junod during his employment with Defendant Burris or its subsidary, Honor Foods, did not contain any notice that the group life insurance was convertible to an individual life

insurance policy upon separation from employment or that the separated employee had 30 days from the date of his/her separation to convert the policy.

107.   Defendants had a duty, either in the Plan document or in another writing to confirm that Mr. Junod had timely notice of this right to convert.

108.   Defendants breached their duty by failing to provide any notice of Mr. Junod's conversion rights until 10 months after his separation from employment and more than six months after his death.

109.   Defendants failure to provide timely notice to Mr. Junod proximately caused Plaintiff's claim for death benefits, which was made timely upon Mr. Junod's death, to be denied, resulting in her loss of death benefits due under the policy.

**WHEREFORE**, Plaintiff Joan Junod demands judgment against Defendants United of Omaha Life Insurance Company and Burris Logistics, Inc., jointly and severally, for compensatory damages in the full amount of the death benefit due to Francis Junod at the time of his termination, plus interest, costs of suit, attorneys fees and such other relief as this Court deems just and reasonable

## COUNT IX
## INTENTIONAL NON-DISCLOSURE

110.   Plaintiff repeats and incorporates all the allegations in Paragraphs 1-109 in this Complaint as if set forth fully and at length herein.

111.   Plaintiff seeks alternative relief to the extent ERISA does not apply pursuant to Fed. R. Civ. P. 8(a)(3).

112.   The group life insurance provided to Plaintiff's deceased husband, Mr. Junod, was an employee benefit under the Plan.

113.   As set forth above, the Plan document provided to Mr. Junod during his employment with Defendant Burris or its subsidiary, Honor Foods, did not disclose or contain any notice that the group life insurance policy was convertible to an individual life insurance policy upon separation from his employment or that the separated employee had 30 days from the date of his or her separation to convert the policy.

114.   Defendants' also failed to disclose to Mr. Junod in writing that he had a right to convert the group life insurance policy to an individual life insurance policy within 30 days of his termination from employment.

115.   Defendants' failure to disclose to Mr. Junod his conversion rights in either the Plan document or in a separate writing received by Mr. Junod constituted Defendant's intentional non-disclosure of a material fact.

116.   Defendants' intentional non-disclosure of the conversion right was made under circumstances where Defendants' knew of its falsity.

117.   Defendants intended that Mr. Junod and Plaintiff rely on the Plan document, which reliance resulted in the denial of the death benefit claim to Plaintiff upon Mr. Junod's death.

**WHEREFORE**, Plaintiff Joan Junod demands judgment against Defendants United of Omaha Life Insurance Company and Burris Logistics, Inc., jointly and severally, for compensatory damages in the full amount of the death benefit due to Francis Junod at the time of his termination plus punitive damages, interest, costs of suit, attorneys fees and such other relief as this Court deems just and reasonable.

## COUNT X
## BREACH OF CONTRACT BY DEFENDANT BURRIS LOGISTICS

118.   Plaintiff repeats and incorporates all the allegations in Paragraphs 1-117 in this Complaint as if set forth fully and at length herein.

119.   This Count is pleaded as an alternative relief pursuant to Fed R. Civ. P. (a)(3).

120.   Plaintiff communicated with Defendant Burris' representative, Ann Polites, subsequent to the expiration of the 30 day conversion period claimed by Defendant to have barred the claim of Plaintiff herein as untimely.

121.   Defendant Burris offered to reinstate Plaintiff's decedent's benefits which offer was accepted by Plaintiff.

122.   Defendant Burris thereafter reneged on the contract to reinstate the Plan Life benefit to Plaintiff.

123.   As a result of that breach of Defendant Burris, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff demands judgment in her favor awarding the contractual benefit of $50,000 plus interest, costs of suit, attorneys fees and such other relief to which she is entitled pursuant to state and federal law.

CRAIG, ANNIN & BAXTER, LLP

/s/ *Jeffrey S. Craig, Esquire*
_____
Jeffrey S. Craig, Esquire
Attorney for Plaintiff

Dated:

## DEMAND FOR TRIAL BY JURY

Plaintiff, Joan Junod, hereby demands trial by jury as to all issues not subject to the Employee Retirement Income Security Act.

CRAIG, ANNIN & BAXTER, LLP

/s/ Jeffrey S. Craig, Esquire

_____

Jeffrey S. Craig, Esquire
Attorney for Plaintiff

Dated:

Exhibit A



Ahead of the *curve* in *refrigerated* logistics.



# 2015
# Honor Foods Union
# Team Member
# Benefit Information

### WHAT'S CHANGED FOR 2015:

⇒ *New Wellness Bonus Requirements*

⇒ *New Medical & Dental Contributions*

⇒ *New Alternate "Super" Networks for Florida, Georgia and Maryland*

⇒ *Dental Implants covered at 50%*

⇒ *Dental Maximum increased from $1,000 to $1,200*






# *Table of Contents*

*New Alternate Networks (Florida, Georgia and Maryland)..........4*

*Coordination of Benefits...............................................6*

*Coverage Stop and Start Dates.....................................6*

*BCBSM Base and Premium PPO Plans...........................7*

*Medical Benefit Outlines............................................8*

*Medical Contribution Schedule...................................11*

*Emergencies..........................................................12*

*Prior Authorization/Step Therapy................................13*

*Express Scripts Pharmacy Services..............................13*

*Generic Medications................................................13*

*Transamerica Limited Medical Plan Information...................14*

*MediGuide America Second Opinion Program...................15*

*Hyatt Legal Plans...................................................15*

*Employee Assistance Program....................................16*

*2015 Wellness Program............................................17*

*Blue365 Member Perks.............................................18*

*MetLife Dental Benefits............................................19*

*EyeMed Vision Benefits............................................20*

*Unum Voluntary Group Critical Illness Benefits.................22*

*Unum Voluntary Group Accident and Sickness Benefits.........23*

*Team Member Life and AD&D Benefits...........................24*

*Spouse & Dependent Voluntary Life Benefits....................25*

*Short and Long Term Disability Benefits.........................25*

*Regulations..........................................................26*



## Team Member Benefit News

The cost of quality health care continues to rise. Factors for this include new treatments, improved technology, increased regulations and an aging population. Although Burris received a rate increase on our medical and dental plans, to minimize the financial impact on team members, Burris is assuming the majority of the cost increase. Burris strives to continually offer the best coverage at the lowest possible cost for our team members.

Effective January 1, 2015, you have the opportunity to participate in one of the following medical plans:

◈    **Blue Cross Blue Shield of Michigan (BCBSM) Base Plan**

◈    **Blue Cross Blue Shield of Michigan (BCBSM) Premium Plan**

◈    **Transamerica Limited Medical Plan**

During this open enrollment period you have the opportunity to:

❑    Change your medical coverage selection.

❑    Enroll in the medical plan of your choice if you have previously waived coverage.

❑    Enroll eligible dependents previously not enrolled.

**Please keep in mind that...**

➢    You and your eligible dependents must each enroll in the same plan.

➢    You must complete a Flex Form if you would like to continue to participate in one of the medical plans.

➢    The plan you select is the plan in which you will remain until the next open enrollment period with an effective date of **January 1, 2016.**

**Burris Logistics** will continue to require contributions for their medical plans due to rising health care costs. The contributions are detailed on the contribution schedule on page 11.



Burris Logistics believes the Blue Cross Blue Shield of Michigan (BCBSM) Base and Premium PPO Plans are "grandfathered health plans" under the federal Patient Protection and Affordable Care Act (PPACA). As permitted by PPACA, a grandfathered health plan can preserve certain basic health coverage that was already in effect when that law was enacted.

Being a grandfathered health plan means your BCBSM Base and Premium PPO Plans may not include certain consumer provisions of PPACA that apply to other plans, for example, the requirement for the provision of preventive health services without any cost sharing. There will be no changes to preventive health services from the previous plan year. However, grandfathered health plans must comply with certain other consumer provisions provided by PPACA, for example, the elimination of lifetime limits on benefits.

For more information, or if you have any questions please contact your local HR Representative or Corporate Human Resources at 302.839.5118.

### Member Services Phone Directory

| | |
|---|---|
| BCBS Fax for Health Maintenance Exam | 866.392.6496 |
| BCBS Member Services | 800.752.1455 |
| Employee Assistance Program | 800.316.2796 |
| Express Scripts Mail Order | 800.903.8346 |
| Express Scripts Pharmacy Services | 800.711.0917 |
| Express Scripts Retail Pharmacy Services | 800.922.1557 |
| EyeMed Vision Care Member Services | 866.723.0514 |
| Hyatt Legal Plans | 800.821.6400 |
| MediGuide America's Second Opinion | 800.961.4843 |
| MetLife Dental Member Services | 800.474.7371 |
| Transamerica Benefit Services | 866.975.4641 |
| Transamerica Pharmacy Services | 877.269.9148 |
| UNUM (to call to receive wellness bonus) | 800.635.5597 |
| Wage Works FSA Member Services | 877.924.3967 |

## ATTENTION RESIDENTS IN OR NEAR FLORIDA, GEORGIA, AND MARYLAND

If you receive health care services from a provider in the states of Florida, Georgia, or Maryland, please be aware that your health care network is changing. Beginning January 1, 2015, the network for health care services provided in Maryland will be BlueChoice ®. Also on this date, the new network for health care service providers in Florida and Georgia will be Blue Precision ®.

We expect this change to cause minimal disruption to team members as roughly 97% of your doctors and health care facilities are already in these networks.

**HOWEVER IT IS CRITICAL THAT TEAM MEMBERS RECEIVING HEALTH CARE SERVICES IN THESE STATES CONFIRM THAT THEIR DOCTORS ARE IN THESE NETWORKS!** Why? If your current doctor is not a provider in these networks, any services you receive from your doctor after January 1, 2015 will be considered "OUT-OF-NETWORK."

To determine if your doctor is in your appropriate network you may call your doctor directly to verify their participation; call BCBS Member Services at 800.752.1455; call Lorie Williams at the J.S. Clark Agency at 248.996.1839 or go online and follow the instructions below:

1. Go to **www.bcbsm.com** and in the left menu click on "Find a Doctor" in the Blue Box.

2. You may either click on "Get Started" in the Blue Box, or if you have a BCBSM Member Log in, you can click on "Login" in the Green Box.

3. Then Click here:

   **What do you want to do?**
   - I want to find a doctor or hospital by name
   - I want to find a Primary Care Physician in my plan
   - I want to find doctors or hospitals in my plan
   - Advanced Search

4. A drop box will open requiring you to complete two steps. First enter your zip code, address or county in the space provided, then for Step 2 select "Alternate Network."



5.  Finish Step 2 by selecting the state you are intending to receive services in from the "sub plan" drop down box then move onto Step 3:

6.  In Step 3, type what you are looking for in the box provided. It will auto-fill as you type with suggested searches. In this example, "Hospitals" was typed in. Once you finish typing in your search word or phrase, click "Go" in the lower right corner and wait for your results.

Your End Result will look like this to the left.



## *Coordination of Benefits*

Please be aware that two person and family participants of the Blue Cross Blue Shield of Michigan (BCBSM) plan will receive a "Coordination of Benefits Subscriber Questionnaire."



The purpose of this questionnaire is to determine if any member on your medical contract is covered under another group health plan. If this questionnaire is not returned to BCBSM, and a claim is received, the claim will not be paid. The claim will be pended (held by BCBSM).

BCBSM will then send another questionnaire to you with a request to return it within 15 days, or claims will be rejected. If the second questionnaire is not returned to BCBSM within 45 days from the day the claim is received, the claim will be rejected. You and/or your provider will be advised the rejection is due to your failure to return the completed questionnaire.

If the questionnaire is then returned completed, you must resubmit any claims that have been rejected for manual processing. You will receive this questionnaire annually from BCBSM. Please complete the questionnaire and return it promptly to BCBSM to avoid any claim problems.

## *When Does Coverage Begin and Terminate?*

You will become eligible to participate in any or all of the select plan benefits upon completion of your waiting period. Human Resources will advise you of your waiting period and effective date of coverage. Eligible dependents will become effective when you become eligible.

<u>IMPORTANT NOTE:</u>  If you are not at work on your effective date because of a sickness or disability, insurance on yourself and your dependents will be delayed until such time as you return to full time active employment.

Additionally, if a dependent other than a newborn is confined for medical care or treatment in any institution (or at home under the physician's care) when coverage would normally begin, the coverage will be delayed until such time as that dependent is given a final release by a physician from all such confinement.

Medical coverage for you and your dependents will automatically terminate at 11:59 p.m. on the date your employment terminates. Under certain circumstances you may qualify for benefits beyond that date.

In the case of legal separation or divorce, coverage for your former spouse will terminate on that date.  Do not assume that coverage will automatically continue simply because you are required to provide coverage under the terms of a divorce decree.  <u>Burris does not cover ex-spouses.</u> Your spouse does have the right to enroll in the benefit plan under COBRA and is eligible for up to 36 months of coverage at their expense.

Your spouse is not eligible for the Burris medical plan <u>IF</u> the spouse is offered coverage through their employer AND they do not pay more than 50% of the cost of their employer's plans AND they DO NOT elect the coverage through their own employer.

# The BCBSM Base and Premium PPO Plans

The BCBS Base and Premium PPO plans provide you with freedom of choice. Blue Preferred, BlueChoice and Blue Precision PPO plan members are not required to select a Primary Care Physician and they do not need a referral to see another PPO network provider.



Blue Preferred, BlueChoice and Blue Precision PPO members do not have to notify BCBS when changing physicians. When you choose to receive services from a provider who is not a member of the PPO network, the copayment, deductible and coinsurance amount for which you are responsible increases.

In addition to increased copayment amounts, some services are not payable when rendered by non-PPO providers. However, if a member wishes to go to a non-PPO provider who is not listed, they should call BCBS for information and status of the provider.

### Network Providers

You are the one to determine the best provider from whom to receive care, regardless of whether that provider is in the Blue Preferred, BlueChoice, or Blue Precision PPO provider network or not; however, your out-of-pocket costs for related services will be less (i.e. lower deductible and coinsurance) if you utilize Blue PPO network providers. In other words, the plan will pay a higher percentage of these services if you receive them from Blue Preferred, BlueChoice, or Blue Precision "PPO" providers.

To find PPO providers in your area, simply go to **www.bcbsm.com** and select Find a Doctor, Lab or Hospital, then select your appropriate network.

### Non-Network Providers

Be aware you may still be responsible for charges which exceed the BCBS approved amount if you do not use participating providers.

When you receive care from a provider who is not part of the BCBS PPO network, your care is considered out-of-network. Before choosing a non-network provider, verify if the service is covered. Some services may not be covered **out-of-network**. If you use Blue participating providers outside the PPO network:

- ▣ The provider may bill BCBS directly for your services.

- ▣ You may be billed for any differences between BCBS approved amount and their charges.

### Nonparticipating Providers

Nonparticipating providers have not signed agreements with Blue Cross Blue Shield. If you receive services from a nonparticipating provider, you are usually required to pay providers directly and may be required to submit a claim to BCBS for payment.

When you use a provider who does not participate with BCBS:

- ◈ You will receive payment directly from BCBS.

- ◈ The amount you receive from BCBS may be significantly less than the amount a nonparticipating provider charges you.

- ◈ You are responsible for paying the provider.

- ◈ You are responsible for any difference between BCBS's payment and the provider's charges.

7

## *Burris Logistics Benefit Outline*

| ITEM | BCBSM BASE PPO PLAN | | BCBSM PREMIUM PPO PLAN | |
|---|---|---|---|---|
| | In-Network | Out-of-Network | In-Network | Out-of-Network |
| **Calendar Year Deductible** | | | | |
| For an Individual | $850 | $1,600 | $350 | $650 |
| For a Family | $1,700 | $3,200 | $700 | $1,300 |
| **Calendar Year Coinsurance** | 80% after deductible | 60% after deductible | 80% after deductible | 70% after deductible |
| **Out-of-Pocket Limit (includes deductible):** | | | | |
| For an Individual | $1,850 | $4,600 | $950 | $1,850 |
| For a Family | $3,700 | $9,200 | $1,900 | $3,700 |
| **ITEM** | **BCBSM BASE PPO PLAN** | | **BCBSM PREMIUM PPO PLAN** | |
| | **In-Network** | **Out-of-Network** | **In-Network** | **Out-of-Network** |
| **Preventive Medical Services** | | | | |
| Health Maintenance Exams (physical) | Covered—100% No office visit copayment | Not covered | Covered—100% No office visit copayment | Not covered |
| Routine Gynecological Exam (one per calendar year) | Covered—100% after $25 copayment | Covered—60% after deductible | Covered—100% after $20 copayment | Covered—70% after deductible |
| Pap Smear Screening (one per calendar year) | Covered—100% | Covered—60% after deductible | Covered—100% | Covered—70% after deductible |
| Routine Mammogram (one per calendar year—no age restrictions) | Covered—100% | Covered—60% after deductible | Covered—100% | Covered—70% after deductible |
| Routine Well—Child Care | Covered—100% after $25 copayment | Not covered | Covered—100% after $20 copayment | Not covered |
| Routine Immunizations | Covered—100% after $25 copayment | Covered—60% after deductible | Covered—100% after $20 copayment | Covered—70% after deductible |
| Hearing Tests | Covered when billed in conjunction with physical | Not covered | Covered when billed in conjunction with physical | Not covered |
| Endoscopic Exams - one per calendar year | Covered—100% | Covered—60% after deductible | Covered—100% | Covered—70% after deductible |
| Routine Blood Antigen Test (PSA) | Covered—100% | Covered—60% after deductible | Covered—100% | Covered—70% after deductible |

   

## Burris Logistics Benefit Outline

| ITEM | Base PPO Plan | | Premium PPO Plan | |
|---|---|---|---|---|
| | In-Network | Out-of-Network | In-Network | Out-of-Network |
| **Treatment of Illness or Injury** | | | | |
| Diagnosis & Treatment in the PCP's office | Covered—100% after $25 copayment | Covered—60% after deductible | Covered—100% after $20 copayment | Covered—70% after deductible |
| Specialist Care | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| 2nd Surgical Opinion | Covered—100% after $15 copayment | Covered—60% after deductible | Covered—100% after $15 copayment | Covered—70% after deductible |
| Outpatient Surgery | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Allergy Therapy in PCPs Office | Covered—100% after $25 copayment | Covered—60% after deductible | Covered—100% after $20 copayment | Covered—70% after deductible |
| Specialist | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Allergy Testing | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Lab Services | Covered—80% after deductible | Covered—60% after deductible | Covered—100% | Covered—70% after deductible |
| X-Ray & Machine Tests | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Physical & Occupational Therapy (Outpatient) | Covered—80% after deductible combined 30 visits per calendar year | Covered—60% after deductible combined 30 visits per calendar year | Covered—80% after deductible combined 30 visits per calendar year | Covered—70% after deductible combined 30 visits per calendar year |
| Speech Therapy (Outpatient) | Covered—80% after deductible combined 30 visits per calendar year | Covered—60% after deductible combined 30 visits per calendar year | Covered—80% after deductible combined 30 visits per calendar year | Covered—70% after deductible combined 30 visits per calendar year |
| Radiation Therapy & Chemotherapy | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Nursing Home Visits | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Chiropractic | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| **In the Hospital** | | | | |
| Semiprivate Room & Board (includes intensive care, if medically appropriate and maternity) | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Intensive Care | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Physician's/ Surgeon's Services | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Other Medically Necessary Services | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |

# *Burris Logistics Benefit Outline*

| ITEM | Base PPO Plan | | Premium PPO Plan | |
|---|---|---|---|---|
| | In-Network | Out-of-Network | In-Network | Out-of-Network |
| **Emergency Medical Care** | | | | |
| Hospital Emergency Room | $150 copayment per visit (waived if admitted) | Covered—60% after deductible | $150 copayment per visit (waived if admitted) | Covered—70% after deductible |
| Urgent Care Visits | Covered—100% after $25 copayment | Covered—60% after deductible | Covered—100% after $20 copayment | Covered—70% after deductible |
| Ambulance | Covered—100% after $50 copayment | Covered—60% after deductible | Covered—100% after $50 copayment | Covered—70% after deductible |
| **Substance Abuse Care—IN-PATIENT CARE MUST BE PRE-AUTHORIZED BY CALLING 800 752 1455** | | | | |
| Special Treatment for Alcohol and Drug Abuse | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| **Mental Health Care—IN-PATIENT CARE MUST BE PRE-AUTHORIZED BY CALLING 800 752 1455** | | | | |
| Inpatient and/or Partial Hospital Care | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Outpatient | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| **Maternity (Physician's Services)** | | | | |
| Prenatal/Postnatal Care | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Delivery | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| **Other Services** | | | | |
| Private Duty Nursing | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Hospice | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Home Health Care | 80% after the deductible for up to 240 visits per calendar year | 60% after the deductible for up to 240 visits per calendar year | 80% after the deductible for up to 240 visits per calendar year | 70% after the deductible for up to 240 visits per calendar year |
| Prosthetic Devices | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after Deductible |
| Durable Medical Equipment | Covered—80% after deductible | Covered—60% after deductible | Covered—80% after deductible | Covered—70% after deductible |
| Skilled Nursing Facility | 80% after deductible for up to 120 days per calendar year | 60% after deductible for up to 120 days per calendar year | 80% after deductible for up to 120 days per calendar year | 70% after deductible for up to 120 days per calendar year |
| Prescription Drugs (Retail) Express Scripts Drug Card | Generic—$10 Preferred—$40 Non-Preferred—$55 | Generic—$10 Preferred—$40 Non-Preferred—$55 | Generic—$10 Preferred—$35 Non-Preferred—$50 | Generic—$10 Preferred—$35 Non-Preferred—$50 |
| Prescription Drugs (Mail Order) Express Scripts Drugs | Generic—$20 Preferred—$80 Non-Preferred—$110 | Generic—$20 Preferred—$80 Non-Preferred—$110 | Generic—$20 Preferred—$70 Non-Preferred—$100 | Generic—$20 Preferred—$70 Non-Preferred—$100 |

➡ All percentages listed above apply to the Blue Cross Blue Shield of Michigan's maximum allowable charge.
➡ When calculating deductible or coinsurance expenses, only the allowable charges are considered

# 2015 Medical Weekly Contribution Schedule

| BASE PPO PLAN | Individual | 2 Person | Family |
|---|---|---|---|
| 1 Month to 3 Months | $112.12 | $190.75 | $291.55 |
| 4 Months to 6 Months | $25.65 | $104.27 | $203.27 |
| 7 Months to 1 Year | $5.61 | $44.83 | $93.00 |
| 13 Months to 2 Years | $5.61 | $25.18 | $49.27 |
| 25 Months to 3 Years | $5.61 | $17.36 | $32.07 |
| 3 Years or More | $5.61 | $9.54 | $14.58 |
| PREMIUM PPO PLAN | Individual | 2 Person | Family |
| 1 Month to 3 Months | $125.45 | $213.42 | $326.17 |
| 4 Months to 6 Months | $49.63 | $137.59 | $250.34 |
| 7 Months to 1 Year | $18.82 | $65.52 | $122.96 |
| 13 Months to 2 Years | $18.82 | $43.54 | $74.37 |
| 25 Months to 3 Years | $18.82 | $34.57 | $54.80 |
| 3 Years or More | $18.82 | $32.01 | $47.83 |
| | | | |



# When are Emergencies Covered?

One of the most frequently asked questions is, "When are emergencies covered under the plan?" To avoid unnecessary expenses, you need to know what qualifies as an emergency, and the benefits available for emergency services. Covered services for emergencies include two categories:

- **Accidental Injury**
- **Medical Emergency**

An **accidental injury** is any injury caused by an external action, object or chemical agent.

**Examples of accidental injuries:**

- sprains or cuts
- inhalation of smoke

- swallowing of poison
- burns and frostbite
- overdoses of medication
- attempted suicide



A **medical emergency** is an internal condition threatening life or bodily functions, or one resulting in bodily harm unless treated promptly.

**Examples of a medical emergency:**

- severe chest pain or bleeding (not a result of an injury)
- convulsions
- loss of consciousness

# What Will My Health Plan Cover in the ER?

**Your health plan will pay for treatment in the E.R. of such serious symptoms only when:**

- The condition (or its symptoms) occurs suddenly and unexpectedly.

- The physician agrees when the patient arrived in the emergency room, a threat to life and bodily functions appeared to exist, and treatment is given within 72 hours of the onset of the condition.

**Services not covered in the Emergency Room are:**

- Routine medical care given in a hospital emergency room.
- "Routine" means care normally provided in a physician's office for conditions such as a cold, headache, back pain, and slight fever.
- Treatment of chronic (long lasting) conditions requiring repeated visits to the hospital, unless there is a sudden life threatening change in the condition, or

symptoms the attending physician agrees appeared life threatening.

- Follow up visits after treatment for the original emergency.

Physicians and hospitals use insurance guidelines to determine what services qualify as medical emergencies.

The guidelines ensure you are covered in an emergency, but minimize health care costs by authorizing payment for treatment in emergency situations only.

*Note: When an emergency room claim has been denied, and you feel it was an emergency situation, you should request a copy of the emergency room report or ask the hospital to resubmit the claim with the emergency room notes. The claim will be reviewed by a medical professional to see if the signs and symptoms met the criteria of an emergency at the time of treatment.*

## Prior Authorization and Step Therapy

**Express Scripts** monitors the use of certain medications to ensure members receive the most appropriate and cost-effective drug therapy. Physicians are required to get "*Prior Authorization*" on some medications. This means certain clinical criteria must be met before coverage is provided.

Depending on the medication, previous treatment with formulary drugs may be required. The "*formulary*" is a list of medications identified by Express Scripts as being therapeutically effective and offering the best value. Your physician can contact the

Express Scripts Pharmacy Clinical help desk at **800.922.1557** to request prior authorization for these drugs. You may be required to pay for the full cost of the drug if your physician does not obtain prior authorization.

For more information regarding step therapy and prior authorization, and a list of medications on the formulary list, go to **www.express-scripts.com**. The web site allows you to access the Express Scripts formulary and provides you with specific information regarding your plan's drug program.

## Express Scripts Pharmacy Services

**Express Scripts** is the administrator of your retail prescription program. In order to fill a prescription, a retail pharmacy must first confirm your prescription benefits through Express Scripts.

If you ever experience difficulty getting a prescription filled at a retail pharmacy, call Express Scripts Pharmacy Services at **800.711.0917** and follow the prompts to speak with a Member Services representative. The Express Scripts representative can advise you on why your prescription may not be authorized or what needs to be done to fix any

issues. Express Scripts can also suggest lower cost equivalent alternative prescriptions covered by your plan.

If Express Scripts informs you your doctor failed to get Prior Authorization *(see above)*, you can contact your physician's office right from the pharmacy and remind them to call Express Scripts Pharmacy Clinical help desk at **800.922.1557**. This will reduce waiting time in the pharmacy on your part and prevent you from paying out-of-pocket for medications that should be covered as a part of your prescription program.

## The Advantages of Generic Medications

Understanding the advantages of generic medications as compared with more expensive brand name medications can help you effectively lower your prescription drug premiums.

Generic medications contain the same active ingredients and deliver the same therapeutic effects as their brand name counterparts. The big difference between generics and brand name drugs is price. Generic drug costs are

between 40% to 60% less than brand name drug prices.

Plus, with generic medication there is no compromise on quality. The Food and Drug Administration holds generic drug manufacturers to the same stringent standards as brand name manufacturers. Be sure to check with your doctor to see if a generic medication is right for you before switching.

## Medical Plan Options—Transamerica

## Medical Contributions Cost Per Week

Team Member……………………………………………$23.16
Team Member + Spouse……………………………$47.98
Team Member + Child(ren)………………………$38.73
Family ……………………………………………………$57.63



***FOR ASSISTANCE REGARDING MEDICAL BENEFITS CALL 866.975.4641***
***FOR PHARMACY ASSISTANCE CONTACT PROCARE AT 877.269.9148***

| Benefit | Plan |
|---|---|
| **Daily In-Hospital Indemnity Benefit** Per day over 23 hours (max of 31 days per confinement) | $400 |
| **Outpatient Surgical Indemnity Benefit** Covers 1 day per calendar year for outpatient surgery, pays one-tenth the benefit per day, 1 per calendar year for specified outpatient surgeries | $350 per day for standard outpatient; $70 per day for minor outpatient |
| **Inpatient Surgical Indemnity Benefit** Pays benefit per day, 1 day per calendar year for inpatient surgery | $700 |
| **Anesthesia Benefit** Pays additional 20% of the surgical benefit for anesthesia | 20% of the surgical amount |
| **Outpatient Physician Office Visit Indemnity Benefit** Per day up to max days per calendar year per covered person | $70 day 6 day maximum |
| **Outpatient Diagnostic X-Ray and Laboratory Indemnity Benefit** Pays benefit per day, 1 day per calendar year for advanced studies, pays one-quarter the benefit per day for Select Diagnostic tests, 1 day per calendar year, and pays one-twentieth the benefit per day for diagnostic laboratory tests, 1 day per calendar year | $400 |
| **Off-the-Job Accidental Injury Benefit** Pays benefit for the day of an accident (5 covered accidents per calendar year) | $500 |
| **Wellness Indemnity Benefit** 1 day per calendar year per insured over 2 years of age; 4 days per year for children 0-12 months and 2 days per year for children 12-24 months | $100 |
| **Prescription Drug Indemnity Benefit** Per day a prescription is filled for up to 12 days per calendar year, per covered person | $15 Generic $30 Brand |
| **Group Term Life Insurance Policy with Accidental Death and Dismemberment Rider (AD&D)** AD&D not available to dependent children | Employee $10,000 Spouse $5,000 Child(ren) $2,500 |
| **Employee Discount Card Offered by New Benefits LTD** Provides access to discount Vision plan, Nurses Hotline, Counseling Services and discounts on Hearing Aids | |

**\*The Transamerica limited medical plan is not considered to be creditable coverage under the terms of Health Care Reform therefore you may be subject to a $325 tax, or 2% of your income, whichever is greater.**

# *MediGuide America's Second Opinion Program*

If you are enrolling in Burris Logistics health benefits plan, you are automatically eligible to take advantage of MediGuide America's Second Opinion Program. There are no costs to Team Members who utilize this program.



**800.961.4843**
**www.mediguide.com**

How it works is simple. Team members who have been diagnosed with certain illnesses can have their diagnoses and treatment plans evaluated by specialists across the country. By providing you access to an independent review from a world leading medical center, the program offers you comprehensive information and advice to assist you with making important decisions regarding your health. These "Second Opinions" are typically provided in writing to you within seven business days from the receipt of your medical records. For more information, please see Human Resources.

# *Hyatt Legal Plans*

Are you concerned about identity theft and how to protect yourself? Have you been putting off writing a Will? During this open enrollment period, you have the opportunity to enroll in METLAW®, a legal services benefit offered by Hyatt Legal Plans (a wholly owned subsidiary of the Metropolitan Life Insurance Company).

**Smart. Simple. Affordable.**

**Hyatt Legal Plans**
**A MetLife Company**

Hyatt Legal Plans (HLP) is the largest provider of group legal plans in the U.S. and has been in the business since 1981. HLP plan attorneys must meet stringent criteria before joining the network and are regularly reviewed to ensure they continue to meet plan standards.

By enrolling in the Hyatt Legal Plan, you gain access to legal services which cover a large variety of legal needs. **The cost to you is only $18 per month, which equates to $4.15 per pay for team members paid weekly or $8.30 for those paid bi-weekly.**

## *PEACE OF MIND*

The plan covers representation for many personal legal services for not only you, but the coverage extends to your eligible dependents (eligible dependents are your spouse and unmarried dependent children). You may receive office consultations and/or telephone advice for virtually any personal legal matter. This gives you the opportunity to discuss with an attorney legal issues that are not specifically excluded matters, even if the matter is not fully covered.

## *HOW THE PLAN WORKS*

To use the legal plan benefits after you're enrolled, call Hyatt Legal Plans' Client Service Center at 800.821.6400. The last four digits of your Social Security Number is your identifier for you and your dependents. An HLP representative will verify your eligibility, make an initial determination of coverage, give you a case number, provide you with the telephone number of a Plan Attorney most convenient to you; and answer any questions you have about the plan. You may also use the plan by visiting the HLP web site at www.legalplans.com.

# Employee Assistance Program

We have purchased the services of Mutual of Omaha's Employee Assistance Program (EAP) for you and your immediate family members.

### What is an Employee Assistance Program (EAP)?

An EAP is a confidential work-based program designed to assist team members, their family members and significant others with personal and job-related concerns.

### Is there a cost for using the EAP?



The EAP service is free of charge. If additional help is needed, your EAP will work with you to locate needed resources to include health insurance benefits.

### Why would Burris purchase this program for their Team Members?

The health and well-being of team members plays a major role in the success of any company. An understanding of this relationship has resulted in more and more companies making EAP services available to their team members in the interest of maintaining optimum health and productivity in the workplace.

### Who can use the EAP?

As a Burris Logistics team member, you, your immediate dependent family members and significant others are eligible.

### Why do people call the EAP?

Thousands of people call their EAP each year for assistance with a wide range of issues. Certainly, any concern would be a reason to contact the EAP. In many situations, family members have financial, relationship, stress, parenting, substance abuse, and/or emotional concerns.

### Who will know that I have used the EAP?

Any contact with EAP is confidential and EAP Professionals are strictly bound by ethical and legal considerations in this regard. If you have any questions when you call, please discuss them with your EAP Professional.

### Who will answer my call to the EAP?

A valuable service of your EAP is immediate access to Employee Assistance Professionals at any time, day or night, 365 days a year.

### What can I expect when I call the EAP?

⇒ To speak directly to an EAP Professional immediately
⇒ To receive support and guidance from a trained professional
⇒ To have a better understanding of the issues you are concerned about
⇒ To work with EAP Professionals to develop a plan which meets your needs

### What do those who have used EAP say about the EAP?

Over 95% of EAP Users surveyed said they were very likely to recommend EAP to co-workers and family members. Furthermore, over 95% said they would not hesitate to contact EAP again if the need arises.

### How do I reach the Employee Assistance Program?

 It's as simple as calling 800.316.2796 anytime, twenty-four hours a day, 365 days a year.

# 2015 Wellness Program

# BlueHealthConnection®

Because we view our Team Members as our greatest asset, we are INVESTING IN YOUR HEALTH! By enrolling in either of our BCBSM PPO plans, you are automatically eligible for the BlueHealthConnection program.

BlueHealthConnection is an online resource provided by Blue Cross Blue Shield of Michigan (BCBSM). For the 2015 plan year, we will be implementing a modified Wellness Program, one where you can proactively manage your health. The program is designed to encourage Team Members to build stronger relationships with their Primary Care Physician (PCP), provide wellness coaching opportunities for Team Members and provide you with the tools to improve your overall health.

For the 2015 Wellness Program, you are required to see your PCP for a Health Maintenance Exam (physical) and have your Physician complete a BCBS Qualification Form. This form must be completed and returned to BCBS within 90 days of January 1, 2015. Failure to complete this requirement will make you ineligible for any Wellness Bonus opportunities and place you in the weekly surcharge grouping. If you have had a Health Maintenance Exam since April 1, 2014, you are not required to have another exam-just have your Physician complete the BCBS Qualification Form. In the event that your Primary Care Physician should charge you for completing the BCBS Qualification Form, provide a receipt of payment to your local Human Resources Team for reimbursement from Burris Logistics.

Please note that your spouse or any other dependents are not required to complete this task.

Based on your individual results, you may be asked to participate in two telephone sessions with a BCBS Wellness Coach by July 1, 2015. Failure to do so will result in noncompliance and deem you ineligible for the Wellness Bonus.

Either you or your Physician must fax the completed Qualification Form to BCBS at 866.392.6496. Please keep a copy of the Qualification Form and proof of fax transmittal.

**Wellness Initiative Team Member Costs**

To encourage you to participate and commit to the Wellness Program, Burris Logistics will pay for your Health Maintenance Exam conducted by an in-network doctor, not previously a covered benefit. In the event that your PCP should charge for completing the BCBS Qualification Form, provide a receipt of payment to your local Human Resources Team for reimbursement.

**Wellness Program Bonus Payments**

Team Members enrolled in BCBS as of January 1, 2015, with a minimum of one-year seniority, will have the opportunity to earn a one-time $100 Wellness Program bonus. To receive the bonus, first the Team Member must complete and submit the BCBS Qualification Form. Secondly, you must complete any follow-up telephone sessions with a BCBSM Wellness Coach by July 1, 2015.

Finally, Burris Logistics will reimburse Team Members up to 50% (maximum of $100) for participating in a smoking cessation program, gym membership or a weight-management program. You must provide any physician statements and proof of gym or other memberships, etc. by July 1, 2015.

Payment of these rewards will be made to active Team Members in August 2015.

Team members who opt not to participate in the Wellness Program will result in higher medical costs for themselves and the plan.

If you choose not to participate in the Wellness Program, you will be assessed a surcharge of an additional $10 weekly medical premium beginning September 1, 2015 for a period of twelve months.

## *Blue365® Member Perks*

Living healthy just got easier!  Join Blue365 and start saving today!  With Blue365, great deals are yours for every aspect of your life—like 20% off at **www.Reebok.com**, discounted products through Jenny Craig, or a gym membership for only $25 a month.   

To take advantage of this program you will need to register at **www.blue365deals.com/Plan ID)**. It's an online destination featuring healthy deals and discounts exclusively for Blue Cross Blue Shield of Michigan Members.

Just have your Blue Cross Blue Shield Member ID card handy.  In just a couple of minutes, you will be registered and ready to shop!  If you are interested, the Blues will send you a special deal straight to your personal email inbox every week!

**Check out these top brands with deals and discounts for your everyday healthy activities:**



- Beltone offers participating BCBS Plan Members a 26% off suggested retail price for Eligible Products and Services.



- Blue365 members receive a 21% off list price for CORE and LINK armbands and displays. A 3-month subscription is included with purchase.



- Free access to CaringBridge websites for those experiencing health challenges.



- Discounts on eye exams, lenses, frames and contacts.



- Blue365 members receive 25% off standard retail pricing on online wellness webinars.



- 20% off ProtectMyID identity theft monitoring
- 25% off Triple Alert credit monitoring.

**Fairmont**
HOTELS & RESORTS

- 10% off room rate plus $50 food and beverage credit (2-night minimum stay, subject to availability).

*healthways fitness your way*

- Access to 8,000 participating gyms nationwide for $26/month with a minimum 3 month commitment.
- Discounts of up to 30% off for access to a network of over 40,000 health and well-being practitioners including chiropractors, acupuncturists, massage therapists, registered dieticians and more.



**Membership Options:**
- 30-day trial: Free*
- 25% off Premium Programs.
- No processing fees.

**For More Information on Blue 365:** *www.bcbs.com/blue-365-healthy-deals/*

## MetLife® Preferred Dentist Program (PDP)

| Coverage Type | PDP In-Network | Out-of-Network |
|---|---|---|
| Type A—(For example, cleanings, oral exams and other maintenance type procedures) | 100% of PDP Fee* | 100% of PDP Fee** |
| Type B–(For example, fillings, simple extractions, endodontics and other standard dental procedures) | 80% of PDP Fee* | 80% of PDP Fee** |
| Type C-(For example, bridges and dentures, crowns, implants and other complex procedures) | 50% of PDP Fee* | 50% of PDP Fee** |
| Deductible | In-Network | Out-of-Network |
| Individual—applies to Type B & C Services | $25.00 | $25.00 |
| Family—applies to Type B & C Services | $50.00 | $50.00 |
| Annual Maximum Benefit | In-Network | Out-of-Network |
| Per Person | $1,200 | $1,200 |

*PDP Fee refers to the fees that participating PDP dentists have agreed to accept as payment in full, subject to any deductibles, cost sharing and benefits maximums.

** Your out-of-pocket expenses may be more, since you will be responsible to pay any difference between the dentist's usual fee and your plan's payment.

The service categories shown above represent an overview of your Plan of Benefits but is not a complete description of the Plan. A summary plan description will be made available following your plan's effective date, and will govern if any discrepancies exist between this overview and the Plan Summary.

### COST PER WEEK

| | Member | Member Plus One | Family |
|---|---|---|---|
| 1 Month to 3 Years | $3.99 | $8.61 | $13.58 |
| 3 Years or More | $0.40 | $0.86 | $1.36 |

# PDP Savings Example

Here's an example* of how receiving services from a PDP (IN-NETWORK) dentist can save you money.

**Met Life Contact Information**

800.474.7371
www.metlife.com/dental

**Example:**

❖ Your Dentist says you need a Crown, a Type C service
❖ PDP Fee $375.00 versus Dentist's Standard Fee of $600.00

| IN-NETWORK When you receive care from a participating PDP dentist: | | OUT-OF-NETWORK When you receive care from a NON-participating PDP dentist: | |
|---|---|---|---|
| Dentist's Standard Fee: | $600.00 | Dentist's Standard Fee: | $600.00 |
| The PDP Fee: | $375.00 | | |
| Your Plan Pays: | | Your Plan Pays: | |
| 50% X $375 PDP Fee: | -$187.50 | 50% X $375 PDP Fee: | -$187.50 |
| Your Out-of-Pocket Cost: | $187.50 | Your Out-of-Pocket Cost: | $412.50 |

In this example, you SAVE $225.00 ($412.50 minus $187.50) by using a participating PDP dentist.

*Please note: This example assumes that your annual deductible has been met.

## EyeMed Vision Care® Voluntary Vision

| Vision Care Services | In-Network Member Cost | Out-of-Network Member Reimbursement |
|---|---|---|
| **Exam with Dilation as Necessary** | $10 Copayment | Up to $30 |
| **Exam Options:** Standard Contact Lens Fit/Follow-Up: Premium Contact Lens Fit/Follow-Up: | Up to $40 10% off Retail | N/A N/A |
| **Frames:** Any available frame at provider location | $0 Copayment; $120 Allowance, 20% off balance over $120 | Up to $60 |
| **Standard Plastic Lenses** | | |
| Single Vision | $25 Copayment | Up to $25 |
| Bifocal | $25 Copayment | Up to $40 |
| Trifocal | $25 Copayment | Up to $55 |
| Standard Progressive Lens** | $90 | Up to $40 |
| Premium Progressive Lens** | $90, 80% of Charge less $120 Allowance | Up to $40 |
| **Lens Options:** | | |
| UV Treatment | $15 | N/A |
| Tint (Solid and Gradient) | $15 | N/A |
| Standard Plastic Scratch Coating | $15 | N/A |
| Standard Polycarbonate | $40 | N/A |
| Standard Anti-Reflective Coating | $45 | N/A |
| Polarized | 20% off Retail Price | N/A |
| Other Add-Ons | 20% off Retail Price | N/A |



*Member Services:*
*Pre-Enrollment 1.866.299.1358*
*Enrolled Members*
*1.866.723.0514*

website: *www.eyemedvisioncare.com*

*(See website for participating providers)*

| Contact Lenses<br>(Contact lens allowance includes materials only) | | |
|---|---|---|
| Conventional | $0 Copay; $120 allowance,<br><br>15% off balance over $120 | Up to $96 |
| Disposable | $0 Copay; $120 allowance,<br>plus balance over $120 | Up to $96<br><br>Up to $200 |
| Medically Necessary | $0 Copay, Paid-in-Full | |
| **Laser Vision Correction**<br>Lasik or PRK from U.S. Laser Network | 15% off retail price or 5% off promotional price | N/A |
| **Additional Pairs Benefit:** | Members also receive a 40% discount off complete pair eyeglass purchases and a 15% discount off conventional contact lenses once the funded benefit has been used. | N/A |
| **Frequency:**<br>Examination<br>Lenses or Contact Lenses<br>Frame | Once every 12 months<br>Once every 12 months<br>Once every 12 months | |

** Standard/Premium Progressive lenses not covered - fund as a Bifocal Lens

(Note:  EyeMed is *100% VOLUNTARY*)

# Voluntary Vision Benefit
# Weekly Member Cost

There are no changes to your Voluntary Vision contributions for 2014.

| Individual | Two Person | Family |
|---|---|---|
| $1.43 | $2.72 | $3.99 |

# *Voluntary Group Critical Illness Insurance*

Voluntary Group Critical Illness Insurance pays you a lump sum, tax-free benefit based on the diagnosis of a covered illness. These funds can be used however you choose to cover any expenses your health insurance does not cover.



**Features:**

⇒ GUARANTEE ISSUE—NO MEDICAL UNDERWRITING FOR THIS YEAR!
⇒ Coverage options for team members are $5,000 or $10,000; spouse of $5,000
⇒ Automatic coverage for dependent child(ren)*
⇒ Level premiums do not increase as you age (age banded; tobacco/non-tobacco)
⇒ 100% portable
⇒ 12/12 pre-existing condition limitation

*25% of team member coverage amount plus coverage for newborns for cystic fibrosis, spinal meningitis, Down's syndrome, cerebral palsy, cleft palate)*

**Covered Conditions:**

- Heart Attack
- Stroke
- Major Organ Failure
- Permanent Paralysis
- End Stage Renal Disease
- Coronary Artery Bypass Surgery (25%)
- Blindness
- Benign Brain Tumor
- Cancer
- Carcinoma in Situ (25% of benefit)

**Covered Conditions Due to Injury:**

- Coma Benefit
- Permanent Paralysis
- Occupational HIV

**Specific Childhood Conditions:**

- Cerebral Palsy
- Cleft Lip or Palate
- Cystic Fibrosis
- Down Syndrome
- Spina Bifida

Once you complete your Health Maintenance Exam—call UNUM at 800.635.5597 and receive a $50 Wellness Bonus per team member and their spouse!

| Critical Illness Plan with Cancer Benefit (NON-SMOKER) and $50 Wellness Bonus | | | | |
|---|---|---|---|---|
| AGE | FACE AMOUNT | WEEKLY PREMIUM | FACE AMOUNT | WEEKLY PREMIUM |
| 25 | $5,000 | $1.10 | $10,000 | $1.82 |
| 35 | $5,000 | $1.66 | $10,000 | $2.95 |
| 45 | $5,000 | $2.90 | $10,000 | $5.42 |
| 55 | $5,000 | $4.77 | $10,000 | $9.16 |

If you are currently enrolled in an AFLAC program you may remain in that program if you choose.

# *Voluntary Group Accident Insurance*

Voluntary Group Accident Insurance pays you a lump sum, tax-free benefit based on the type of accident and treatment received whether it occurs ON or OFF the job. If you are very active and/or have child(ren) in organized sports (not compensated), this is a no-brainer for you!



**LOW OPTION Features:**

⇒ Accidental Death and Dismemberment Insurance built in of $50,000 for team member; $20,000 for spouse; and $10,000 for child(ren)
⇒ $1,000 hospital admission
⇒ $200 per day hospital confinement (up to 365 days)
⇒ Emergency room treatment—$150 per visit for up to four visits
⇒ Chiropractic visits—$25 for up to three visits
⇒ PCP, Urgent Care, Specialist follow-up visits—$75 for two visits
⇒ Medical imaging—$200
⇒ Outpatient surgery facility service—$300
⇒ Physical, occupational, and speech therapy—$25 for ten visits
⇒ Burn and surgery benefits included
⇒ Dislocations and fractures included
⇒ Regular and air ambulance benefits included
⇒ Level premiums do not increase as you age
⇒ 100% portable

**HIGH OPTION Features:**

⇒ ALL OF THE LOW OPTION FEATURES
⇒ Sickness Hospital Confinement rider covering $200 per day up to 30 days

Once you complete your Health Maintenance Exam—call UNUM at 800.635.5597 and receive a $50 Wellness Bonus per team member and their spouse!

| Group Accident Insurance | | |
|---|---|---|
| | ON/OFF JOB HIGH OPTION WEEKLY RATE | ON/OFF JOB LOW OPTION |
| Team Member | $5.26 | $4.10 |
| Team Member + Spouse | $9.09 | $6.76 |
| One Parent Family | $9.83 | $7.40 |
| Two Parent Family | $13.65 | $10.06 |

If you are currently enrolled in an AFLAC program you may remain in that program if you choose.



23

# *Mutual of Omaha*

## EMPLOYEE LIFE / AD&D BENEFITS

### Basic Life / AD&D Benefits (Coverage provided at no cost to you)

Class 1 – Truck Drivers - $50,000
Class 2 – Warehouse Members with fluctuating hourly rates of pay - $35,000
Class 3 – All Other Team Members - One times base annual salary up to a maximum of $100,000
*AD&D Benefits are applicable if death (additional benefit listed above) is due to accident or if there is loss of limb (see schedule of benefits).*



### Voluntary Life Benefits

Additional life coverage is available in $10,000 increments to a maximum of 4 times your salary or $500,000. Guaranteed issue is the lesser of 4 times base annual earnings (rounded to the next highest multiple of $10,000) or $250,000. Any amount higher than the guaranteed issue limits requires a health form. Supplemental life coverage is deducted on a post-tax basis. Team members can increase their voluntary life insurance by $10,000 at open enrollment without being required to provide proof of good health provided it does not exceed 4X annual salary.

The following chart shows the cost per week based on your age at enrollment. If you are electing an amount in excess of $300,000 please see Human Resources for assistance in calculating your per pay premium.

### Voluntary Life Insurance – Proof of Good Health Requirements

Amounts over the guarantee issue amount (the lesser of 4 times base annual salary or $250,000) will require written proof of good health and approval from the carrier.

*Late Entrants – Late entrants are team members, spouses and/or child(ren) that did not enroll when first eligible. Late entrants may elect to participate during any open enrollment period. All elections are subject to written proof of good health (must provide health form) and approval by the carrier.*

**Supplemental AD&D is also available, see the Enrollment Form for rate information.**

| Team Member | <25 | 25-29 | 30-34 | 35-39 | 40-44 | 45-49 | 50-54 | 55-59 | 60-64 | 65-69 | 70-74 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $10,000 | $0.16 | $0.16 | $0.22 | $0.29 | $0.32 | $0.48 | $0.73 | $1.37 | $2.07 | $3.92 | $6.34 |
| $20,000 | $0.32 | $0.32 | $0.45 | $0.57 | $0.64 | $0.96 | $1.46 | $2.74 | $4.14 | $7.83 | $12.67 |
| $30,000 | $0.48 | $0.48 | $0.67 | $0.86 | $0.96 | $1.43 | $2.19 | $4.11 | $6.21 | $11.75 | $19.01 |
| $40,000 | $0.64 | $0.64 | $0.90 | $1.14 | $1.27 | $1.91 | $2.93 | $5.47 | $8.28 | $15.66 | $25.35 |
| $50,000 | $0.80 | $0.80 | $1.12 | $1.43 | $1.59 | $2.39 | $3.66 | $6.84 | $10.35 | $19.58 | $31.68 |
| $60,000 | $0.96 | $0.96 | $1.34 | $1.72 | $1.91 | $2.87 | $4.39 | $8.21 | $12.42 | $23.50 | $38.02 |
| $70,000 | $1.11 | $1.11 | $1.57 | $2.00 | $2.23 | $3.34 | $5.12 | $9.58 | $14.49 | $27.41 | $44.36 |
| $80,000 | $1.27 | $1.27 | $1.79 | $2.29 | $2.55 | $3.82 | $5.85 | $10.95 | $16.56 | $31.33 | $50.70 |
| $90,000 | $1.43 | $1.43 | $2.01 | $2.58 | $2.87 | $4.30 | $6.58 | $12.32 | $18.63 | $35.25 | $57.03 |
| $100,000 | $1.59 | $1.59 | $2.24 | $2.86 | $3.18 | $4.78 | $7.32 | $13.68 | $20.70 | $39.16 | $63.37 |
| $110,000 | $1.75 | $1.75 | $2.46 | $3.15 | $3.50 | $5.25 | $8.05 | $15.05 | $22.77 | $43.08 | $69.71 |
| $120,000 | $1.91 | $1.91 | $2.69 | $3.43 | $3.82 | $5.73 | $8.78 | $16.42 | $24.84 | $46.99 | $76.04 |
| $130,000 | $2.07 | $2.07 | $2.91 | $3.72 | $4.14 | $6.21 | $9.51 | $17.79 | $26.91 | $50.91 | $82.38 |
| $140,000 | $2.23 | $2.23 | $3.13 | $4.01 | $4.46 | $6.69 | $10.24 | $19.16 | $28.98 | $54.83 | $88.72 |
| $150,000 | $2.39 | $2.39 | $3.36 | $4.29 | $4.78 | $7.17 | $10.97 | $20.53 | $31.05 | $58.74 | $95.05 |
| $160,000 | $2.55 | $2.55 | $3.58 | $4.58 | $5.10 | $7.64 | $11.70 | $21.90 | $33.12 | $62.66 | $101.39 |
| $170,000 | $2.71 | $2.71 | $3.81 | $4.86 | $5.41 | $8.12 | $12.44 | $23.26 | $35.19 | $66.57 | $107.73 |
| $180,000 | $2.87 | $2.87 | $4.03 | $5.15 | $5.73 | $8.60 | $13.17 | $24.63 | $37.26 | $70.49 | $114.06 |
| $190,000 | $3.03 | $3.03 | $4.25 | $5.44 | $6.05 | $9.08 | $13.90 | $26.00 | $39.33 | $74.41 | $120.40 |
| $200,000 | $3.18 | $3.18 | $4.48 | $5.72 | $6.37 | $9.55 | $14.63 | $27.37 | $41.40 | $78.32 | $126.74 |
| $210,000 | $3.34 | $3.34 | $4.70 | $6.01 | $6.69 | $10.03 | $15.36 | $28.74 | $43.47 | $82.24 | $133.08 |
| $220,000 | $3.50 | $3.50 | $4.92 | $6.30 | $7.01 | $10.51 | $16.09 | $30.11 | $45.54 | $86.16 | $139.41 |
| $230,000 | $3.66 | $3.66 | $5.15 | $6.58 | $7.32 | $10.99 | $16.83 | $31.47 | $47.61 | $90.07 | $145.75 |
| $240,000 | $3.82 | $3.82 | $5.37 | $6.87 | $7.64 | $11.46 | $17.56 | $32.84 | $49.68 | $93.99 | $152.09 |
| $250,000 | $3.98 | $3.98 | $5.60 | $7.15 | $7.96 | $11.94 | $18.29 | $34.21 | $51.75 | $97.90 | $158.42 |
| $260,000 | $4.14 | $4.14 | $5.82 | $7.44 | $8.28 | $12.42 | $19.02 | $35.58 | $53.82 | $101.82 | $164.76 |
| $270,000 | $4.30 | $4.30 | $6.04 | $7.73 | $8.60 | $12.90 | $19.75 | $36.95 | $55.89 | $105.74 | $171.10 |
| $280,000 | $4.46 | $4.46 | $6.27 | $8.01 | $8.92 | $13.38 | $20.48 | $38.32 | $57.96 | $109.65 | $177.43 |
| $290,000 | $4.62 | $4.62 | $6.49 | $8.30 | $9.24 | $13.85 | $21.21 | $39.69 | $60.03 | $113.57 | $183.77 |
| $300,000 | $4.78 | $4.78 | $6.72 | $8.58 | $9.55 | $14.33 | $21.95 | $41.05 | $62.10 | $117.48 | $190.11 |

PLEASE SEE HUMAN RESOURCES FOR ASSISTANCE WITH ELECTIONS OVER $300,000

# Mutual of Omaha Insurance

## SPOUSE VOLUNTARY LIFE BENEFITS

**Voluntary Life Insurance -- Spouse -** You may elect for your spouse $10,000 to $250,000 in $10,000 increments (if over $10,000 need health form). Your spouse's amount cannot exceed the amount of life insurance you elect. Or if you do not elect voluntary life insurance, the lesser of 4 times your annual salary (rounded to the next higher multiple of $10,000) or $250,000. The cost for your spouse is "**based on age of spouse**".

*Late Entrants -- Late entrants are team members, spouses and/or child(ren) that did not enroll when first eligible. Late entrants may elect to participate during any open enrollment period. All elections are subject to written proof of good health (must provide health form) and approval by the carrier.*

| Spouse Age | ≤25 | ≤29 | ≤34 | ≤39 | ≤44 | ≤49 | ≤54 | ≤59 | ≤64 | ≤69 | ≤74 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $10,000 | $0.22 | $0.22 | $0.22 | $0.25 | $0.32 | $0.45 | $0.70 | $1.08 | $1.69 | $2.99 | $5.25 |
| $20,000 | $0.45 | $0.45 | $0.45 | $0.51 | $0.64 | $0.89 | $1.40 | $2.16 | $3.37 | $5.99 | $10.51 |
| $30,000 | $0.67 | $0.67 | $0.67 | $0.76 | $0.96 | $1.34 | $2.10 | $3.25 | $5.06 | $8.98 | $15.76 |
| $40,000 | $0.90 | $0.90 | $0.90 | $1.02 | $1.27 | $1.78 | $2.81 | $4.33 | $6.75 | $11.97 | $21.02 |
| $50,000 | $1.12 | $1.12 | $1.12 | $1.27 | $1.59 | $2.23 | $3.51 | $5.41 | $8.43 | $14.97 | $26.27 |
| $60,000 | $1.34 | $1.34 | $1.34 | $1.52 | $1.91 | $2.67 | $4.21 | $6.49 | $10.12 | $17.96 | $31.53 |
| $70,000 | $1.57 | $1.57 | $1.57 | $1.78 | $2.23 | $3.12 | $4.91 | $7.58 | $11.81 | $20.95 | $36.78 |
| $80,000 | $1.79 | $1.79 | $1.79 | $2.03 | $2.55 | $3.56 | $5.61 | $8.66 | $13.50 | $23.94 | $42.04 |
| $90,000 | $2.01 | $2.01 | $2.01 | $2.28 | $2.87 | $4.01 | $6.31 | $9.74 | $15.18 | $26.94 | $47.29 |
| $100,000 | $2.24 | $2.24 | $2.24 | $2.54 | $3.18 | $4.45 | $7.02 | $10.82 | $16.87 | $29.93 | $52.55 |
| $110,000 | $2.46 | $2.46 | $2.46 | $2.79 | $3.50 | $4.90 | $7.72 | $11.91 | $18.56 | $32.92 | $57.80 |
| $120,000 | $2.69 | $2.69 | $2.69 | $3.05 | $3.82 | $5.34 | $8.42 | $12.99 | $20.24 | $35.92 | $63.06 |
| $130,000 | $2.91 | $2.91 | $2.91 | $3.30 | $4.14 | $5.79 | $9.12 | $14.07 | $21.93 | $38.91 | $68.31 |
| $140,000 | $3.13 | $3.13 | $3.13 | $3.55 | $4.46 | $6.24 | $9.82 | $15.15 | $23.62 | $41.90 | $73.56 |
| $150,000 | $3.36 | $3.36 | $3.36 | $3.81 | $4.78 | $6.68 | $10.52 | $16.23 | $25.30 | $44.90 | $78.82 |
| $160,000 | $3.58 | $3.58 | $3.58 | $4.06 | $5.10 | $7.13 | $11.22 | $17.32 | $26.99 | $47.89 | $84.07 |
| $170,000 | $3.81 | $3.81 | $3.81 | $4.32 | $5.41 | $7.57 | $11.93 | $18.40 | $28.68 | $50.88 | $89.33 |
| $180,000 | $4.03 | $4.03 | $4.03 | $4.57 | $5.73 | $8.02 | $12.63 | $19.48 | $30.36 | $53.88 | $94.58 |
| $190,000 | $4.25 | $4.25 | $4.25 | $4.82 | $6.05 | $8.46 | $13.33 | $20.56 | $32.05 | $56.87 | $99.84 |
| $200,000 | $4.48 | $4.48 | $4.48 | $5.08 | $6.37 | $8.91 | $14.03 | $21.65 | $33.74 | $59.86 | $105.09 |
| $210,000 | $4.70 | $4.70 | $4.70 | $5.33 | $6.69 | $9.35 | $14.73 | $22.73 | $35.43 | $62.85 | $110.35 |
| $220,000 | $4.92 | $4.92 | $4.92 | $5.58 | $7.01 | $9.80 | $15.43 | $23.81 | $37.11 | $65.85 | $115.60 |
| $230,000 | $5.15 | $5.15 | $5.15 | $5.84 | $7.32 | $10.24 | $16.14 | $24.89 | $38.80 | $68.84 | $120.86 |
| $240,000 | $5.37 | $5.37 | $5.37 | $6.09 | $7.64 | $10.69 | $16.84 | $25.98 | $40.49 | $71.83 | $126.11 |
| $250,000 | $5.60 | $5.60 | $5.60 | $6.35 | $7.96 | $11.13 | $17.54 | $27.06 | $42.17 | $74.83 | $131.37 |

## DEPENDENT CHILD(REN) VOLUNTARY LIFE BENEFITS

**Voluntary Life Insurance -- Dependent Child(ren) -** You may elect $5,000 of coverage for your dependent children. Eligible children must be of 14 days of age up through age 19 (23 if full time student).

Your cost for this benefit is $0.19 per week regardless of number of children in your family.

**PORTABILITY—Keep your coverage even if you leave employer**

## SHORT TERM AND LONG TERM DISABILITY INCOME

**SHORT-TERM DISABILITY—**After one year of employment, full-time members are eligible, at no cost, for short-term disability insured by Mutual of Omaha. Benefits are 70% of regular weekly salary up to 26 weeks. Benefits begin first day of accident or day 8 of illness, and all claims should be filed with Mutual of Omaha. Maximum benefit is $1,000 per week.

**LONG-TERM DISABILITY—**After one year of employment, full-time team members are eligible, at no-cost, for long-term disability insured by Mutual of Omaha. Basic LTD pays 60% of monthly base salary if disabled longer than six months and eligibility and disability requirements have been satisfied . Basic LTD is 100% Company paid. Team members may upgrade benefits to pay 66.6% of monthly base salary at a weekly team members cost of $0.035 per $100 of monthly base rate.
Maximum benefit is $10,000 per month.                                                        *Charts Updated 11/15/11

# Women's Health and Cancer Rights Act

The *Women's Health and Cancer Rights Act* (WHCRA) of 1998 was part of the omnibus appropriations bill passed by Congress and signed into law on October 21, 1998. This law applies to group health plans, health insurance companies and HMOs, if the plans or coverage provide medical and surgical benefits for a mastectomy.

Under WHCRA, mastectomy benefits must include coverage for:

- Reconstruction of the breast upon which the mastectomy has been performed,

- Surgery and reconstruction of the other breast to produce a symmetrical or balanced appearance,

- Prostheses (or breast implant), and

- Physical complications at all stages of mastectomy, including lymphedema.

Coverage for reconstructive breast surgery may not be denied or reduced on the grounds that it is cosmetic in nature or that it otherwise does not meet the coverage definition of "medically necessary." Benefits must be provided on the same basis as for any other illness or injury under the medical plan.

Mastectomy benefits may have yearly deductibles and coinsurance like those established for other benefits under the plan or coverage.

The WHCRA will not allow:

- Plans and insurance issuers to deny patients eligibility or continued eligibility to enroll or renew coverage under the plan to avoid the requirements of WHCRA.

- Plans and insurance issuers to provide incentives to or penalize doctors to cause them to provide care in a manner not supportive with WHCRA.

WHCRA is administered by the U.S. Departments of Labor and Health and Human Services. More information is available from the Department of Labor's website, at **www.dol.gov/ebsa.**



# Newborn & Mother's Health Protection Act

Group health plans and health insurance issuers generally may not, under Federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, Federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable).

In any case, plans and issuers may not, under Federal law, require a provider obtain authorization from the plan or the insurance issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).



# The CHIP Program

**LOUISIANA – Medicaid**
Website: http://www.lahipp.dhh.louisiana.gov
Phone: 1-888-695-2447

**MAINE – Medicaid**
Website: http://www.maine.gov/dhhs/ofi/public-assistance/index.html
Phone: 1-800-977-6740
TTY: 1-800-977-6741

**MASSACHUSETTS – Medicaid and CHIP**
Website: http://www.mass.gov/MassHealth
Phone: 1-800-462-1120

**MINNESOTA – Medicaid**
Website: http://www.dhs.state.mn.us/
Click on Health Care, then Medical Assistance
Phone: 1-800-657-3629

**MISSOURI – Medicaid**
Website: http://www.dss.mo.gov/mhd/participants/pages/hipp.htm
Phone: 1-573-751-2005

**MONTANA – Medicaid**
Website: http://medicaidprovider.hhs.mt.gov/clientpages/clientindex.shtml
Telephone: 1-800-694-3084

**NEBRASKA – Medicaid**
Website: http://www.ACCESSNebraska.ne.gov
Phone: 1-855-632-7633

**NEVADA – Medicaid**
Medicaid Website: http://dwss.nv.gov/
Medicaid Phone: 1-800-992-0900

**NEW HAMPSHIRE – Medicaid**
Website: www.dhhs.nh.gov/oii/documents/hippapp.pdf
Phone: 1-603-271-5218

**NEW JERSEY – Medicaid and CHIP**
Medicaid Website: http://www.state.nj.us/humanservices/dmahs/clients/medicaid/
Medicaid Phone: 609-631-2392
CHIP Website: http://www.njfamilycare.org/index.html
CHIP Phone: 1-800-701-0710

**NEW YORK – Medicaid**
Website: http://www.nyhealth.gov/health_care/medicaid/
Phone: 1-800-541-2831

**NORTH CAROLINA – Medicaid**
Website: http://www.ncdhhs.gov/dma
Phone: 1-919-855-4100

**NORTH DAKOTA – Medicaid**
Website: http://www.nd.gov/dhs/services/medicalserv/medicaid/
Phone: 1-800-755-2604

**OKLAHOMA – Medicaid and CHIP**
Website: http://www.insureoklahoma.org
Phone: 1-888-365-3742

**OREGON – Medicaid**
Website: http://www.oregonhealthykids.gov
Website: http://www.hijossaludablesoregon.gov
Phone: 1-800-699-9075

**PENNSYLVANIA – Medicaid**
Website: http://www.dpw.state.pa.us/hipp
Phone: 1-800-692-7462

**RHODE ISLAND – Medicaid**
Website: www.ohhs.ri.gov
Phone: 1-401-462-5300

**SOUTH CAROLINA – Medicaid**
Website: http://www.scdhhs.gov
Phone: 1-888-549-0820

**SOUTH DAKOTA – Medicaid**
Website: http://dss.sd.gov
Phone: 1-888-828-0059

**TEXAS – Medicaid**
Website: https://www.gethipptexas.com/
Phone: 1-800-440-0493

**UTAH – Medicaid and CHIP**
Website: http://health.utah.gov/upp
Phone: 1-866-435-7414

**VERMONT – Medicaid**
Website: http://www.greenmountaincare.org
Telephone: 1-800-250-8427

**VIRGINIA – Medicaid and CHIP**
Medicaid Website: http://www.dmas.virginia.gov/rcp-HIPP.htm
Medicaid Phone: 1-800-432-5924
CHIP Website: 1-855-242-8282

**WASHINGTON – Medicaid**
Website: http://www.hca.wa.gov/medicaid/premiumpymt/pages/index.aspx
Phone: 1-800-562-3022 ext. 15473

**WEST VIRGINIA – Medicaid**
Website: http://www.dhhr.wv.gov/bms/
Phone: 1-877-598-5820, HMS Third Party Liability

**WISCONSIN – Medicaid**
Website: http://badgercareplus.org/pubs/p-10095.htm
Phone: 1-800-362-3002

**WYOMING – Medicaid**
Website: http://www.health.wyo.gov/healthcarefin/equalitycare
Telephone: 1-307-777-7531

OBM Control Number 1210-0137 (expires 10/31/2016)

Exhibit B



A Value Added Redistributor
**Division of Burris Logistics**

---

Frank Junod
3443 Aubrey Ave
Philadelphia PA 19114

USPS Certified Mail/ Return Receipt: 7013 1090 0001 6716 9476

February 27. 2015

Dear Frank,

I hope this letter finds you recovering well, and we appreciate the ongoing updates regarding your condition. This letter updates our previous letter from FMLA Matters, regarding the expiration of your FMLA leave and your employment status.

You have been out on Family Medical Leave since August 18, 2014. Your FMLA entitlement expired on November 10, 2014. We had previously extended your FMLA until January 2, 2015, and then again until February 23, 2015. Because you were unable to return to work, and required leave beyond your FMLA entitlement, addition leaves of absence (Non-FMLA) to accommodate you.

At this time, we regret to inform you we can no longer can hold your position. Effective March 1, 2015, your employment with Honor Foods will be terminated.

We would like to thank you for your time with Honor Foods and wish you the best in a speedy recovery. Once you are ready to return to work, you are you are more than welcomed to reapply.

At this time our records indicate that you have a company issue cell phone that retails as $100.00 and a cash advancement $300.00 which we will deduct from your final Paid Time Off (PTO) paycheck. Once we receive the cellphone we will return the payment of $ 100.00.

Please feel free to contact me if you should have any questions.

Sincerely,

Ann Polites
Director of Human Resources

Exhibit C



**HONOR FOODS**
A Value Added Redistributor
**Division of Burris Logistics**

Joan Junod
3443 Aubrey Avenue
Philadelphia, PA 19114

January 18, 2016

**RE: Frank Junod's 401K and Life Insurance**

Dear Ms. Junod,

We are in receipt of your letter dated January 10, 2016, in regards to Frank 401K plan. Franks 401(k) plan is handled by Principal Financial, you can call them at 1-800-547-7754 and they will be the best ones to advice you of your options.

As far as Frank's life insurance. On March 9, 2015 Mutual of Omaha sent a letter to Frank's attention in regards to his conversion of life insurance. The group offers the options of conversion on the Basic Life coverage and the options of portability or conversion on the Voluntary Life. The forms would need to be completed and sent in with payment within 31 days of coverage ending. Frank's employment ended with Honor Foods on March 1, 2015, the application was to be returned to Mutual by March 31, 2015.

I hope this answers your questions, please let me know if you need any further information.

Sincerely,

Ann Polites
Director of Human Resources

# Exhibit D



**Mutual of Omaha**

Address all correspondence to

DETROIT GROUP OFFICE
28001 Cabot Dr, Suite 130
Novi, Michigan 48377
Phone (248) 994-0797/(800)-431-6482
Fax (248) 994-0809

March 9, 2015

Dear Frank Junod,

Due to your recent termination from Burris Logistics, please accept this letter as an offer to convert your current life policy to an individual policy.

Please refer to the enclosed document for more information.  If you have any questions please contact our Group Conversion Team at 1-800-826-8054. .

# Life Conversion Coverage

## LIFE GOES ON WITH GROUP CONVERSION

Your group life insurance has been valuable protection for you and your family. Now that it will be terminated, you may wish to convert this important coverage to an individual policy. This information has been prepared to help you take advantage of your right to continue your protection.

## ABOUT LIFE CONVERSION COVERAGE

Life Conversion Coverage is individual permanent life insurance issued without evidence of insurability.

Life Conversion Coverage can be obtained when your life insurance under the group policy ends. Your group certificate will describe when conversion coverage is available to you, and will show the amount of coverage you can convert.

Conversion coverage will be issued without evidence of good health, provided:
(a) you complete the attached application,
(b) you enclose a check or money order for the first premium payment and
(c) these items are forwarded to us within 31 days after your group insurance ends.

Your conversion policy will be effective on the 31st day after your group insurance ends. During this 31-day period, you remain covered under the continued coverage provision of your group certificate.

You may apply for an amount that is not more than the amount of your current group insurance coverage (this is your maximum). You may elect coverage in $1,000 increments up to your maximum.

The individual policy is Whole Life Express Insurance, which provides a level benefit throughout your lifetime. Premiums for this coverage are payable while living until the policy anniversary following age 95.

Premium rates are shown in the table that follows. If premium payments are discontinued, you may:
(a) receive any existing cash value or
(b) use the cash value to purchase extended term insurance or a reduced amount of paid-up life insurance.

For additional information or premium rates on conversion coverage, please write or call us at:

Attn:  Group Policy Services, Group Conversion
United of Omaha Life Insurance Company
Mutual of Omaha Plaza
Omaha, Nebraska  68175
Phone:  1-800-826-8054

## TO APPLY FOR LIFE CONVERSION COVERAGE

In order to apply for life conversion coverage, you must do the following:

1) Complete the Life Conversion Application that follows. Use black or blue ink, or a typewriter. Write clearly and do not erase – any corrections should be crossed out and initialed by you. Answer each question fully – do not use dashes or ditto marks.

2) Make sure the section entitled "Information to be Completed by the Personnel Office" is completed by the employer or administrator of the group policy.

3) Attach your check or money order payable to United of Omaha Life Insurance Company for the first annual or semiannual premium payment.

4) Send your premium payment and completed application to the above address within 31 days after your group insurance ends.

*Privacy Notice: When United of Omaha Life Insurance Company evaluates an application for life conversion coverage, only the information on the application is reviewed. This information, and other information we may later collect to administer coverage, may sometimes be disclosed without your express authorization. We have a procedure which allows you to review and amend any information we collect about you – other than information relating to a claim, lawsuit or criminal proceeding. If you would like to know more about our information practices, please write us at the address shown above.*

## CALCULATING THE PREMIUM

The premium amounts in the table below are per $1,000 of coverage. Calculate your annual and/or semiannual premium in the calculation worksheet, following the steps and example below.

**To calculate annual and semiannual premium:**

1) Divide your desired death benefit amount by 1,000.
2) Locate your age group and gender on the table below to identify the premium rate per thousand.
3) Multiply #1 by #2 above.
4) Add $36 for the annual policy fee to obtain the **annual premium** for the coverage.
5) Multiply the annual premium by .52 to obtain the **semiannual premium** for the coverage.

| Issue Age | Male | Female |
|-----------|---------|---------|
| 0-4 | $6.80 | $6.10 |
| 5-9 | $7.70 | $6.90 |
| 10-14 | $8.80 | $7.80 |
| 15-19 | $10.00 | $9.00 |
| 20-24 | $17.00 | $12.50 |
| 25-29 | $21.00 | $15.00 |
| 30-34 | $25.00 | $17.50 |
| 35-39 | $30.00 | $20.50 |
| 40-44 | $35.00 | $24.00 |
| 45-49 | $41.00 | $30.00 |
| 50-54 | $46.00 | $33.00 |
| 55-59 | $58.00 | $40.00 |
| 60-64 | $80.00 | $51.00 |
| 65-69 | $111.00 | $72.00 |
| 70-74 | $154.00 | $108.00 |
| 75-79 | $196.00 | $149.00 |
| 80-84 | $238.00 | $198.00 |
| 85 | $304.00 | $255.00 |

**Example** (Assumes a 50-year-old male with current group life coverage of $20,000.)

| 20 | x | $46.00 | = | $920.00 | + | $36 | = | $956.00 |
|----|---|--------|---|---------|---|-----|---|---------|
| Desired coverage amount/$1,000 | | Premium rate per thousand | | Premium for coverage | | Annual policy fee | | Total annual premium |

| $956.00 | x | .52 | = | $497.12 |
|---------|---|-----|---|---------|
| Total annual premium | | | | Total semiannual premium |

**Calculation Worksheet**

| _____ | x | _____ | = | _____ | + | $36 | = | $_____ |
|--------|---|--------|---|--------|---|-----|---|---------|
| Desired coverage amount/$1,000 | | Premium rate per thousand | | Premium for coverage | | Annual policy fee | | Total annual premium |

| _____ | x | .52 | = | _____ |
|--------|---|-----|---|--------|
| Total annual premium | | | | Total semiannual premium |

Exhibit E



# CraigAnninBaxterLaw

JEFFREY S. CRAIG, ESQUIRE
ALSO ADMITTED IN PENNSYLVANIA
AND DELAWARE

JCraig@kwclawyers.com

January 30, 2017    

**Via Certified RRR and Regular Mail**
Ann Polites
Director of Human Resources
Honor Foods/Burris Logistics
1801 N. 5th Street
Philadelphia, Pa 19122

**Via Certified RRR and Regular Mail**
Attn: Life Insurance Claims
Mutual of Omaha
3300 Mutual of Omaha Plaza
Omaha, Nebraska 68175

Re:    Life Insurance Death Benefit for Frank Junod, deceased

Dear Ms. Polites and Representative of Mutual of Omaha:

This firm has been retained to represent Joan Junod, the widow of Francis ("Frank") Junod, a former employee of Honor Foods, who passed away on June 5, 2015. I am writing to notify you that I am making a formal claim against Honor Foods, a subsidiary of Burris Logistics, and Mutual of Omaha for the full death benefits (believed to be approximately $43,000) due from Frank Junod's group life insurance policy issued to him by Mutual of Omaha through his employment with Honor Foods.

There are two separate bases for this claim. First, Frank Junod was not properly and timely informed of his rights to convert his group life insurance policy into an individual policy upon the termination of his employment. Second, Honor Foods, acting through its employee/agent, Ms. Polites, represented to Ms. Junod in June 2015 that Honor Foods would ensure the death benefit was paid if Ms. Junod paid the back due premiums to Honor Foods from the proceeds of the death benefits.

By way of brief background, Frank Junod was employed by Honor Foods for almost 18 years as a truck driver. In August 2014, he was diagnosed with prostate cancer which, despite chemotherapy and radiation, aggressively spread to esophageal cancer and then brain cancer. Sadly, Frank Junod succumbed to the disease and passed away on June 5, 2015.

Prior to his passing, Honor Foods terminated him on March 1, 2015, presumably at the expiration of his FMLA period. The termination letter, dated February 27, 2015 from Ms. Polites at Honor Foods to Frank Junod is attached to this letter as Exh. A.

Pursuant to Honor Foods Union Team Benefits, Frank Junod was entitled to both Accidental Death and Disability (AD&D) Insurance and guaranteed Voluntary Group Life Insurance up to a maximum of four times (4x) his salary up to $250,000, with the premiums

January 30, 2017
2 | P a g e

for this coverage paid through payroll deductions. Although this guaranteed Life Insurance was apparently convertible to an individual policy based on completion of an application and payment of premium within 31 days after the termination of group life insurance benefits, the 2015 Honor Foods Union Team Member Benefits Information Booklet does not notify an employee of these conversion rights and deadlines, and in fact, makes no mention of the conversion rights. A copy of the Benefit Booklet is attached as Exh. B.

Moreover, the February 27, 2015 Honor Foods Termination Notice Letter (Exh. A) mentions a list of post-employment obligations/benefits, but it makes no mention of Frank Junod's right to convert his group life insurance to individual coverage.

After Frank Junod's death in June 2015, his widow, Ms. Junod, called Ms. Polites at Honor Foods to inquire as to Frank Junod's life insurance benefits. She was told by Ms. Polites that Mutual of Omaha had sent Frank Junod papers in March 2015 (when he was in the midst of his cancer treatments) about the conversion policy which he had to sign and return within 30 days. Ms. Junod, who lived with Frank Junod at the time and was his primary caregiver, remarked that Frank, a meticulous record keeper, had never received any such notice from Mutual of Omaha and if he had received same, he would have completed any such form promptly and completely, especially in light of the fact that he had paid into the policy during his employment at Honor Foods and the policy was intended as to benefit his wife, and would be necessary, in light of his serious illness. It makes no sense that Frank Junod would have allowed such policy to lapse when he was in the end stages of a terminal illness.

Ms. Polites then offered that Honor Foods would "reinstate" the policy if Ms. Junod would agree to pay back premiums that would have been due for the three months from April 1 through June 2015, when Frank Junod passed away. According to Ms. Polites, Honor Foods would "put up" $2,000 toward the back premiums if Ms. Junod would agree to put up the other "$2,000". Ms. Polites further informed that Ms. Junod would have to agree to reimburse Honor Foods for the $2,000 it "put up" after the policy was reinstated and the death benefits paid.

Ms. Junod agreed to the "reinstate" arrangement proposed by Ms. Polites. Ms. Polites sent Joan Junod the Conversion Application and Explanation to complete. Ms. Junod completed the paperwork and returned it to Honor Foods, but did not hear anything from Ms. Polites. Ms. Junod never sent a $2,000 check to Honor Foods for the reinstatement because Ms. Polites never informed her when to send it or where to send it or to whom to make it payable.

Two months passed and Ms. Junod heard nothing. She did not receive any response from either Honor Foods or Mutual of Omaha. In August 2015, Ms. Junod called Ms. Polites to inquire as to the status of the life insurance death benefits. Ms. Polites informed her during that conversation that she had received an email from Mutual of Omaha that the life insurance claim was denied. Ms. Polites did not give any explanation.

Ms. Junod was understandably devastated and very upset. She wrote to Ms. Polites asking for an explanation as to the reason for the denial and asking for proof that Frank Junod had been notified of his right to convert the group life insurance policy to individual life insurance at the termination of his employment and had, in fact, declined such option.

January 30, 2017
3 | P a g e

On January 18, 2016, Ms. Polites sent Ms. Junod a letter stating, without proof or documentation, that Mutual of Omaha had sent Frank Junod a letter on March 9, 2015 (nine days post termination) notifying him of the conversion option and requiring payment and completion of the forms by March 31, 2015. [A copy of Honor Foods January 28, 2016 letter is attached as Exh. C]. Notably, Ms. Polites did not include any proof of a conversion notice or any proof that Mutual of Omaha had sent Frank Junod a conversion notice with her January 28, 2016 letter.

Ms. Junod and her children have made numerous inquiries to both Mutual of Omaha and Honor Foods requesting documentation that the conversion notice was ever sent to Frank Junod. They have received no response from either that would show that Frank Junod was informed of his conversion rights.

Specifically, in July 2015 after Ms. Polites and Joan Junod had the conversation wherein Ms. Polites suggested reinstatement of the policy, Kathy Junod and Kenneth Junod, two of Joan Junod's adult children, went to Honor Foods to ask for documentation as to their father's life insurance. Ms. Polites refused to speak with them and they were rebuffed.

In September 2016, Janice Vicere, another of Joan Junod's adult children, finally was able to get Ms. Polites on the phone. Ms. Vicere asked for documentation as to the conversion, and in response, Ms. Polites sent Ms. Vicere a Memo on Mutual of Omaha Letterhead with a salutation to "Dear Frank Junod", dated March 9, 2015, which purported to be an offer to convert the group life insurance policy to an individual policy. Attached to the Memo was a two page form explaining Conversion and a blank "Conversion Application" [A copy of the March 9, 2015 Conversion Memo and Package is attached as Exh. D]. Remarkably, the memo, which Ms. Polites claims was sent to Frank Junod in March 2015 does not contain an address for Frank Junod, does not contain any identifying information for Frank Junod such as date of birth, does not contain any indication as to how the Memo and Package were sent or delivered to Frank Junod and does not contain any signature from any one at Mutual of Omaha.

Moreover, when a legal representative from Ms. Junod contacted Mutual of Omaha in late 2016 asking for documentation as to the denial of Frank Junod's life insurance claim, the Junod's learned that Mutual of Omaha had no information on Frank Junod in their system, including address or date of birth. This makes Ms. Polites' claim that Mutual of Omaha sent a "conversion package" to Frank Junod in March 2015 even more dubious.

It is clear from the above that Frank Junod had a right to convert his group life insurance policy that he had paid into for years to an individual policy when he was terminated by Honor Foods in the midst of his terminal illness. It is also clear that Frank Junod was never informed of that right through either the negligence or oversight or malfeasance of either Honor Foods or Mutual of Omaha. This fact is even more apparent by Ms. Polites offer following Frank Junod's death to have the policy reinstated through a post-mortem buy back agreement with his widow, Joan Junod, and by both companies' inability to document proof that timely notice of the conversion rights were given to Frank Junod prior to this death.

January 30, 2017
**4 | P a g e**

Honor Foods' and Mutual of Omaha's actions in this matter and their treatment of this widow and her family are shameful and unacceptable. More importantly, these actions give rise to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence and, in the case of Mutual of Omaha, a potential statutory insurance bad faith claim.

Ms. Junod has authorized me to settle this claim now without litigation for payment of the death benefits due to her late husband under the life insurance in effect at the time of his termination.

Upon your receipt of this letter, I ask that you turn it over to your respective legal department for further handling.

If I do not receive a response within fifteen (15) days of the date of this letter, I will take all necessary legal action to protect Joan Junod's interests and rights.

Very truly yours,

CRAIG, ANNIN& BAXTER, LLP



Jeffrey S. Craig

JSC/tmd
Enc.
cc:    Joan Junod

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN JUNOD, individually and as Administratrix of the Estate of Francis Junod, deceased, <br><br> Plaintiff, <br><br> v. <br><br> UNITED OF OMAHA LIFE INSURANCE COMPANY, a Nebraska Corporation and BURRIS LOGISTICS, INC., a Delaware Corporation, <br><br> Defendant. | CIVIL ACTION NO.: 17-cv-00953 <br><br> **FILED** <br> MAY 17 2017 <br> KATE BARKMAN, Clerk <br> By_____ Dep. Clerk |

### CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2017, an original and one copy of the Amended Complaint was overnighted to the United States District Court, Eastern District of Pennsylvania for filing. I certify that the Amended Complaint will be electronically served on counsel using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

E. Thomas Henefer, Esquire
Stevens & Lee
111 N. Sixth Street, P.O. Box 679
Reading, Pa 19603

Steven Schlidt, Esquire
Post & Schell
1600 John F Kennedy Blvd
Philadelphia, PA 19103

I certify that the foregoing statements made by me are true. If any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ *Jeffrey S. Craig, Esquire*
_____
Jeffrey S. Craig, Esquire

Dated: May 16, 2017